### BLANEY *v.* BEARCE.

As between the mortgagor, and *mortgagee,* the fee of the estate passes to the mortgagee at the execution of the deed ; and he may enter immediately, or have a writ of entry against the mortgagor ; unless there be an agreement in writing between them that the mortgagor shall retain the possession and re- ceive the profits.

But as between the mortgagor and *other persons,* he is considered as still hav- ing the legal estate in himself, and the power of conveying it to a third per- son subject to the incumbrance of the mortgage.

Where an absolute deed of real estate is given, and a bond executed by the grantee *at the same time,* though bearing a *subsequent date,* to convey the same land to the grantor, upon payment of a certain sum, the two instruments are to be taken as constituting a mortgage. *Semble.*

Whether the mortgagee, after he has lawfully entered into the mortgaged premises, and before the right of redemption is foreclosed, has a right to cut down and carry away, for the purpose of sale, any timber or other trees growing thereon—*quære.*

Trespass *quare clausum fregit.* The defendant pleaded soil and freehold in himself, which was traversed, and issue taken thereon.

The defendant offered in evidence a deed from the plaintiff to *Samuel Woods,* dated *July* 14, 1819, conveying the *locus in quo,* with general warranty ;—and an assignment on the back of said deed dated *November* 7, 1821, by which the said *Woods* as- signed to the defendant all his estate in the premises, together with a note of hand for $2,800 given by *Blaney* to him dated *July* 15, 1819,—subject however to a bond given by *Woods* to *Blaney* dated *July* 15, 1819, binding himself to convey the premises to *Blaney* upon payment of the amount of the note.

The plaintiff then read in evidence the bond aforesaid, which it was agreed was executed at the same time with the deed from *Blaney* to *Woods,*—the condition of which set forth that whereas *Woods* had on that day bargained and sold to *Blaney* the land in question, and *Blaney* had in consideration thereof given to *Woods* his note of hand for $2,800 payable in one year, therefore if *after the payment of the said note,* and within eighteen months from the date of the bond, *Woods* should, upon request, convey the premises to *Blaney,* and also permit *Blaney* peacea- bly to receive and take to his own use the rents and profits of the premises and every part thereof until such conveyance, then the obligation to be void.

Upon this evidence the Judge who presided at the trial, intending to reserve the questions of law arising in the case for the consideration of the whole Court, directed a verdict to be returned for nominal damages for the plaintiff, which was to stand if, in the opinion of the Court, the action was maintainable, otherwise to be set aside.

*Bailey*, for the defendant.

The intent of the parties so far as it can be collected from the evidence in the case, was to give *Woods* the best possible security for his debt, by a conveyance absolute in its terms. The bond for reconveyance was probably dated subsequent to the deed, for the express purpose of avoiding its operation as a defeasance. And it contains in itself no apt words either of defeasance or of conveyance; but is merely an engagement to execute a deed upon payment of the purchase-money. The title therefore being absolute in *Woods* and by him assigned to the defendant, his entry was lawful, he being the owner of the soil.

*Allen*, for the plaintiff.

The plea having admitted the possession to be in the plaintiff, the question is upon the title of the defendant to the freehold. In the instrument of *July* 15, *Woods* declares that he " has this day bargained and sold" the premises to *Blaney*, and stipulates for his quiet pernancy of the rents and profits. By the words " bargained and sold" the estate passed from *Woods* to *Blaney*, subject to be defeated on *Woods'* cancelling the note, or tendering it to him when the day of payment should arrive. *Jackson v. Smith*, 10 *Johns.* 456. 11 *Johns* 498. And the negotiable note given by *Blaney*, was sufficient consideration for the conveyance.

But if the estate was not reconveyed by *Woods* to *Blaney*, then the latter never parted with his whole estate, but the transaction is to be taken as a mortgage to *Woods* to secure the payment of his debt, in which case the freehold is in the mortgagor till entry for condition broken. It has never been decided by our Courts that the fee is in the mortgagee till *such entry*, pursuant to our statute, or till entry under a writ of possession, for fore-

closure. Prior to this period the relation of the parties is merely that of debtor and creditor. The *debt* is the principal thing, the mortgage only a security for its payment. The reading of the late Judge *Trowbridge* to the contrary must be considered as controled by the subsequent statute of 1788, *ch.* 51. If the law were otherwise, the mortgagee might ruin the pledge. If he can cut trees he may cut all the trees on the land, and even remove the buildings, without remedy ;—for we have no Court with power to grant an injunction to stay waste ; and an action of the case in the nature of waste may be fruitless, if the mortgagee be unable to respond in damages. On this point the decisions of *New-York* are with us. *Runyon v. Mersereau,* 11 *Johns.* 534. So in *Goodwin v. Richardson,* 11 *Mass.* 474, the mortgagee has only the right of acquiring an estate. If he had a freehold, it would go to his heirs, not to the executor ;—yet the *Stat.* 1788, *ch.* 51, makes provision for the case when the mortgagee dies before having acquired *seisin* of the land ;—and the *executor,* and not the heir, may release the land, on payment of the money, and may recover *seisin* by process of law, as though the testator had died seised of the land, for the purpose of making sale for payment of his debts. If the fee were in the mortgagee, his widow would be entitled to dower in the premises,—and it might be taken for his debts. Yet the reverse of this is the settled law. *Blanchard v. Coburn,* 16 *Mass.* 345. His interest in the property may be transferred by *delivery over* of the note and deed ; and therefore it is but a chattel. *Green v. Hart,* 1 *Johns.* 580. *Rex v. St. Michaels, Doug.* 632. So it is the interest of the *mortgagor* that gives him a settlement as a freeholder. The mortgagee gains no settlement by his mortgage. *Groton v. Boxborough,* 6 *Mass.* 52. Nor is it necessary that the rights of the mortgagee should be thus extended,— for he may always enter for condition broken ; or before breach, by process of law ;—but if the estate be a *pledge* for security of the debt, it ought not to be in his power to *destroy* it.

*Wilson,* in reply.

The law on this subject is well settled in *Massachusetts* in *Shaw v. Loud,* 12 *Mass.* 447, and some other decisions, that the freehold is in the mortgagee. And these cases must govern,

notwithstanding the decisions in other States, because they form part of the common law of *Maine*, and are founded on statutes which are copied into our own code. The only case cited from *Massachusetts* to the contrary, was not between parties or privies to the deed of mortgage ;—and it is conceded and settled that as against *strangers*, the mortgagor may have rights, which he cannot claim against the mortgagee.

MELLEN C. J. delivered the opinion of the Court.

The only question put in issue by the pleadings in this case is, whether, at the time of the alleged trespass, the soil and freehold of the *locus in quo* was in the defendant as he has stated in his plea in bar.

In order to decide this question, it seems necessary to examine several points which have been made in the argument.

The defendant relies on the deed from *Blaney* to *Woods*, dated *July* 14, 1819, and on the deed of assignment from *Woods* to the *defendant*, dated *November* 7, 1821, as proof of his title.

The plaintiff relies on the instrument bearing date *July* 15, 1819, and signed by *Woods*, which is in the form of a bond with a condition.—The plaintiff's counsel contends that this instrument contains language amounting to a grant of the *locus in quo* from *Woods* to *Blaney*.—The expression in the instrument alluded to is in these words. " Whereas the above nam- " ed *Woods* has this day bargained and sold unto the above- " named *Blaney* a certain farm," &c. describing the before mentioned premises. It is urged that this reconveys the premises to *Blaney*, and proves the issue on his part. We are well satisfied that this construction cannot be admitted. The *whole* instrument must be examined, and taken together ; and such a construction given, as to render it sensible and consistent.

A part of the condition of the instrument speaks of a conveyance of the estate by *Woods* to *Blaney* to be made on a future day, and on the performance of certain conditions. The plaintiff, therefore, cannot maintain this ground.

The next point urged by plaintiff's counsel is, that as the deed from *Blaney* to *Woods*, and the bond from *Woods* to *Blaney*, were executed at the same time, they both constitute but one contract, and render the deed from *Blaney* to *Woods* a mort-

gage. And in the argument, the defendant's counsel has viewed the conveyance in this light; and therefore it is unnecessary for us to give any opinion respecting it; because, if it be *not* a mortgage, it is perfectly clear that the title is in the defendant.

The next inquiry is, whether, at the time of the supposed trespass, *Blaney* had any *special rights*, beyond those belonging to mortgagors *in general*, in consequence of the provisions in the condition of the bond. By these provisions, the debt was to be paid in one year from the date of the bond; and *after* such payment, and on request, *Woods* was to make and execute a deed of the land to *Blaney;* and to permit and suffer *Blaney* peaceably and quietly to receive and take to his own use the rents and profits of the premises, until such conveyance should be made and executed. By this clause, we must understand that each party intended to perform his engagement according to the terms of it; and on this principle *Blaney* was to retain the possession and receive the profits of the land for the term of eighteen months from the date of the bond, unless he should receive a conveyance before that time, pursuant to the condition; though, if he had paid the money at the time appointed, no conveyance would have been necessary; the estate would at once have revested in *Blaney.* But we must not give such a construction to the condition as to enable *Blaney* to take advantage of his own wrong; and by neglecting to perform *his own* engagement, continue his right of occupation and perception of profits, to the exclusion of the mortgagee or his assignee from the premises.

We are therefore satisfied that the special terms of the condition could have no effect upon the rights of the assignee of the mortgage, (it being admitted that the debt due from *Blaney* to *Woods* has never yet been paid) after the expiration of said eighteen months. It also appears that the supposed trespass was not committed until *after* that time.

In this view of the cause it results, that at the time of the alleged trespass, the defendant, as assignee of the mortgage, had a right to enter on the premises, for breach of the condition, in the manner by law prescribed; but it does not appear that he *then* or at any time *afterwards* did enter for *such purposes.*

Blancy v. Bearce.

The remaining question is, whether at the time above mentioned, the entry of *Bearce* on the lands mortgaged for any *other* purpose than a foreclosure of the mortgage was justifiable; or in the language of the plea in bar; whether the soil and freehold of the close was in *Bearce.*

It has been contended by the counsel for the plaintiff, *that until an entry for breach of the condition, made pursuant to law,* the legal estate remains in the mortgagor; and he has cited several authorities to support this position.

In examining this question, we must keep in view a distinction of importance; and one which may prevent confusion of ideas on the subject. The distinction is this. *As between the mortgagor and mortgagee,* the fee of the estate passes to the mortgagee at time of the execution of the deed; and the mortgagee may enter immediately or maintain a writ of entry against the mortgagor, unless there be an agreement in writing, on his part, that the mortgagor may retain the possession and receive the profits. In support of this principle, we may cite *Groton v. Boxborough,* 6 *Mass.* 50. *Gould v. Newman,* 6 *Mass.* 231. *Scott v. McFarland,* 13 *Mass.* 309. *Pomeroy v. Winship,* 12 *Mass.* 514. *Goodwin v. Richardson,* 11 *Mass.* 469. *Newhall v. Wright,* 3 *Mass.* 155. *Colman v. Packard,* 16 *Mass.* 39. 4 *Johns.* 216 and 6 *Johns.* 290.

But *as between the mortgagor and other persons,* he is considered as still having the *legal estate* in him, and the power of conveying the legal estate to a *third* person, subject to the incumbrance of the mortgage. In support of this principle we may cite *Wellington v. Gale,* 7 *Mass.* 138. *Kelly & ux. v. Beers,* 12 *Mass.* 387. *Porter v. Millet,* 9 *Mass.* 101, and the before mentioned case of *Goodwin v. Richardson.*

In the case of *Blanchard v. Coburn,* cited by the plaintiff's counsel, and in 4 *Johns.* 41. *a stranger to the mortgage deed* was attempting to derive the fee of the estate to himself by a levy of an execution on the lands *as the estate of the mortgagee.* The Court decided against his title; but in giving their opinion, they expressly notice the distinction which we have before stated, between the estate of the mortgagor in relation to the mortgagee, and in relation to the rest of the world. In *Smith v. Dyer,* the Court only decided that the heirs of a *mortgagee* could not

maintain an action on the deed against the mortgagor. The statute giving such action to the executor or administrator of the mortgagee.

According to the principles recognised or established in the foregoing decisions, the *legal estate* in the close in question, *as between Blaney* the *mortgagor* and *Bearce* the *assignee* of *Woods* the *mortgagee*, was at the time of the supposed trespass, in *Bearce ;* and he had a legal right to enter on the premises for breach of the condition. And if he had a right to enter for *such purposes*, the entry was lawful, though he entered without executing his purpose, or even for other purposes. It is true, the entry, unless made in the manner prescribed by law, could not operate as an *entry to foreclose ;* but still it was a lawful act on the part of *Bearce.* And as the jury gave only one dollar damages, which in the report are called *nominal* damages, we are not to presume that any act was done by the defendant on the land, inconsistent with the nature of the estate which he had as assignee of the mortgagee.

It is not necessary in this case to decide, and we do not decide, whether a mortgagee, who has entered into possession of mortgaged premises, *before* or *after* the breach of the condition, has a right to cut down and carry away timber trees or other trees for the purpose of sale, growing on the premises. Such a case may require the examination of other' principles and further consideration.

For these reasons, we are of opinion that on the facts before us, the action is not maintainable; and accordingly the verdict must be set aside, and a new trial granted.