SMITH et al. v. WOOD, on bill;—and,

WOOD v. SMITH, on cross-bill.

The party making payment has the right of directing its application to the discharge of any particular demand he may think fit, provided he does it at or before the time of making the payment: but if the payment is made generally, without any such direction, then the person receiving may apply the payment to any demand in his hands against the person by whom, or on whose account, the payment is made.

Smith and Wright, while partners in trade, purchased a part of the Millville furnace property, of Souders, and gave him their bonds and mortgage on the premises, for the purchase money. They sold and conveyed their respective moieties of the property to Jones, who gave his bond and mortgage to Smith for the purchase money due to him, and also a mortgage to indemnify him against the outstanding bonds to Souders. Jones afterwards conveyed the whole property to Quinby, who re-conveyed it to Wood, subject to these liens. Wood demised the property to Wright, who in the lease was bound to pay the balance of rents, after certain deductions, to Smith, " on account of his claims against D. C. Wood and the Millville furnace property, or such part as might then be due." Within the year, Smith, in lieu of the balance of rents, agreed to accept Wright's notes for specific sums, payable at six and seven months; which were given, and paid, without any further direction from Wood. The stipulation in the lease, from which Wright derived

his authority to pay Smith, was an appropriation by Wood of the payment subsequently made, and Smith was bound to credit it accordingly.

Before the receipt of the money from Wright, Smith had paid a sum of money to Souders, in part discharge of a judgment obtained against Wood and himself, on one of the outstanding bonds given for purchase money, and secured by the mortgage which was a lien on part of the property then in the hands of Wood. On making this payment, Smith had a perfect claim against the property for his indemnity : he had a right to pay this claim out of the first monies received of Wright, and such application of the money was in strict conformity with the agreement and appropriation of Wood.

Whether land purchased by partners in trade, as between themselves, or between them and their creditors, is to be considered as real or personal estate ? *Query.*—But where, as in this case, no claims of creditors interfered, and the partners themselves had not considered the property as partnership property, but treated it as real estate, and separately sold and conveyed their respective moieties, at different times, and for different prices, it must be considered as real estate ; and the balance due on the bond of the partners to Souders, for the purchase money, not as a partnership debt, to be settled in the partnership accounts ; but as a claim against the property, and the payment of that claim comes within the above appropriation.

There being in this case no claims of Smith, *against Wood and the property,* strictly speaking, i. e. which both were liable to pay, to the extent of the appropriation ; it not appearing that Wood was personally liable to pay the *Jones* bonds and mortgage, although he bought the property subject to the lien ; the stipulation in the lease, must, under the circumstances of the case, be understood to mean—the claims of Smith against the property in the hands of Wood, which he, as owner of the equity of redemption, was, in a certain sense, liable to see paid as part of the consideration of his purchase ;—therefore a note, given by Wood to Smith and Jones, which grew out of the partnership transactions of Smith and Wood, but was not a lien upon the furnace property, was not within the appropriation of rent made in the lease, and Smith had no right to apply any part of the money received of Wright to the discharge of that demand.

By the stipulation in the lease, Wright was to pay the balance of rents, as they were received. Smith, in lieu of the rents, agreed to take the notes of Wright. They must be regarded as assumptions, to pay specific portions of the rent at specified times ; and the whole amount of the notes must be applied, as payments, at the times they became due ; and not the present value (after deducting discount) credited at the time the notes were given.

When there is a general payment made by A., by a draft in favour of B., without any specific appropriation by A.—and B. gives a receipt for the draft—" when paid, to be applied, first, to pay interest, and next, so much principal on Jones's bonds and mortgage on the Millville property"—this is an express appropriation of the funds, by which all parties are bound. It cannot afterwards be altered, but by mutual consent ; and then, not to affect the rights of third persons.

A draft, payable out of a particular fund, at an indefinite period of time, and on a contingency, is not a bill of exchange, subject to the rules governing

July, 1830.

Smith et al.
v.
Wood.

commercial paper; and a general acceptance does not alter, but follows thé nature of the draft. On receiving such a draft, and giving a receipt for it, promising "to credit it when paid," the receiver cannot be obliged to credit it until paid, or held accountable for not using due diligence to collect it: the original debt remains until the money is paid.*

In July, 1827, Edward Smith, Hugh F. Hollingshead, and William Platt, exhibited their BILL in this court against David C. Wood, and others, to foreclose the equity of redemption in certain mortgaged premises in the county of Cumberland. The bill states, that in the year 1816, Smith and Wood were seized in fee simple, as tenants in common, of a certain furnace, mills, lands, and other premises, in the said county, and that David C. Wood having bargained with one Joseph Jones to sell him his equal moiety of the property, he, Jones, with the knowledge and at the request of Wood, applied to the complainant, Smith, to purchase his moiety ;—to which the complainant agreed, on condition that the purchase money should be secured by a mortgage on the whole property prior to any other incumbrance. In pursuance of this agreement, D. C. Wood, on the 25th March, 1816, conveyed to Jones his half part of said premises—and the complainant also conveyed to him his moiety—whereby the said Jones became the owner in fee of the whole, subject to an older mortgage to Keyser and Gorgas. On the same day, Jones and wife executed to Smith a mortgage on the said property, to secure the payment of four several bonds duly executed by him to the said Smith—one for the payment of six thousand two hundred and ninety six dollars and ten cents, in one year from date, with lawful interest; and the remaining three, each for the payment of ten thousand two hundred and ninety six dollars and ten cents, one payable in 1818, one in 1819, and the other in 1820; that after the execution and registry of this mortgage, viz: on the 27th March, 1816, Jones and wife conveyed the said premises to one Josiah B. Quinby, and on the 2d April, 1816, Quinby re-conveyed the same to Wood, subject to the complainant's mortgage, and that Wood agreed to pay off said mortgage.

On the 5th July, 1823, Smith assigned Hollingshead and Platt the mortgage, and the three last mentioned bonds, with the interest

* On this point, see the decision of the Court of Appeals, *postea.*

due thereon from the 8th of February then last past ;—the balance of interest up to that time, with the bond for six thousand two hundred and ninety six dollars and ten cents, still remaining due, and to be paid to the complainant, Smith. Although sundry payments had been made, yet there remained due to Hollingshead and Platt, on the 8th February, 1827, the sum of seventeen thousand five hundred and fifty-three dollars and forty two cents, besides certain notes given by Wood towards payment, amounting to five thousand five hundred and fifty-three dollars and fifty-six cents, but which are still unpaid ; and there also remained due at the same period to Smith, on his bond, six thousand one hundred and sixty dollars and eighty cents.   The bill further states, that a part of this property was originally purchased by Smith and Wood, of Keyser and Gorgas, who took a mortgage for part of the purchase money, which was a lien on that part of the property at the time of the purchase by Wood, and formed a part of the consideration ; that Wood accordingly paid off said incumbrance with the exception of two thousand dollars, being the principal of two bonds for one thousand dollars each, one payable 1st October, 1819, the other 1st October, 1820 ; that on the 9th June, 1827, Keyser and Gorgas assigned to the complainant, Smith, the said mortgage and bonds, which bonds are still due.   The bill prays a foreclosure and sale of the premises to satisfy the amount due to the different complainants.

David C. Wood, in his answer, states, that he and Smith were formerly in partnership as merchants, in Philadelphia, under the firm of Smith and Wood ; that commerce being embarrassed, they agreed to turn their attention to the manufacture of iron, and for that purpose purchased the mortgaged premises described in the bill.   He admits the sales as set out in the bill, and the giving of the mortgage to the complainant, Smith ; but denies that he entered " into any absolute engagement personally to pay said Sm th what was due on it."   He admits the assignment of the bonds to Hollingshead and Platt, and alleges that he has made to them sundry payments, which ought to be credited on the bonds, and that he has fully paid and satisfied the mortgage of Keyser and Gorgas.   He states further, that the notes, drafts, payments and advances drawn and made by him and his agents to the complainants, or their or-

der, and upon their account, and towards the payment of the said mortgage given by the said Jones to the said Smith, and which ought, in justice and good conscience to be allowed him, will, upon a just and fair account, in his opinion fully discharge said mortgage, and tenders himself ready to pay what may be due on an account taken, and hopes that if he has overpaid, the amount so overpaid may be refunded.

A replication having been put in, a decree pro confesso was taken against the defendants, who had not answered, and it was referred to one of the masters of the court, to take an account of what was due and payable for principal and interest on the mortgage and bonds given by Jones to Smith, making to all parties just allowances, with authority to examine the parties on interrogatories touching the said matters in controversy.

Pending the reference, the defendant, Wood, filed a cross-bill, to which an answer was put in by the original complainants. The parties filed their statements of charge and discharge before the master. David C. Wood was examined on interrogatories ; testimony was taken on both sides ; and after a full examination of the whole case, the master, on the 25th June, 1829, made his report, that there was due on that day from David C. Wood to Edward Smith, the sum of four thousand nine hundred and twelve dollars and ninety cents, and from David C. Wood to Hollingshead and Platt, the sum of twenty thousand four hundred and seventy-eight dollars and fifty cents.

To this report of the master, both parties filed exceptions, the purport of which appear in the opinion of the court. The exceptions were argued at the last term, by

L. Q. C. Elmer, and I. H. Williamson, for the complainants in the original bill, and by

G. Wood, and G. D. Wall, for the defendants.

THE CHANCELLOR.    I shall consider the exceptions in the order in which they were presented to the court.

And first, as to the exceptions filed by defendant, David C. Wood. The first is—That the said master, in and by his said report, hath charged the said defendant, in schedule A. " by amount paid

D. Souders, as per exhibit 18 of complainant, and paid for defendant, by E. Smith, four hundred and forty dollars and eleven cents. Interest from May 29th, 1820, when paid, till May 14th, 1821, when the first note was paid, twenty-nine dollars and fifty-two cents; equal to four hundred and sixty-nine dollars and sixty-three cents. Whereas the said defendant apprehends that the said master ought not to have charged him with the same, because it was paid, if paid at all, without the approbation of the said defendant; and it was settled, or ought to have been settled and charged in the account of Smith and Wood; and because it was expressly appropriated as a payment in discharge of Jones's mortgage, and could not be appropriated by said Smith; and because it is no lawful item in the said account."

Schedule A. referred to in this exception, and which is appended to the report, contains the master's statement of the amount of principal and interest due on all the bonds, on the 8th February, 1823, when the three last bonds were assigned by Smith to Hollingshead and Platt. According to this statement, the amount due from Wood to Smith, on all the bonds, at that date, was forty thousand three hundred and sixty dollars and nine cents. In ascertaining this amount, the master, after computing the interest, deducts therefrom the several payments made to Hollingshead and Platt, by Wood and his agents, either in money or notes. Among the several items of payment, there are placed under the date of 14th November, 1820, two several notes of Samuel G. Wright, one payable May 14th, 1821, for two thousand three hundred and twenty dollars and seventy-seven cents; the other payable June 14th, 1821, for two thousand three hundred and thirty-two dollars and seventy-nine cents; making in all, four thousand six hundred and fifty-three dollars and fifty-six cents. It appears that instead of lessening the interest then due, by the amount of those two notes, the master has deducted from that amount the sum of four hundred and forty dollars and eleven cents, being so much paid by Smith to Philip Souders, for and on behalf of the defendant, Wood: and he has also deducted the further sum of twenty-nine dollars and fifty-two cents, being interest on the payment to Souders, the same having been paid before Wright's notes became due. The defendant insists that this is a mis-appropriation on the part

of Smith ; that the whole amount of those notes should have been applied to the payment of the Jones bonds ; and therefore, that the deduction made by the master is incorrect.

On the other hand, it is contended by the complainant, that not only is that deduction right, but that other deductions should have been made by the master : that he should have deducted from said notes the sum of one hundred and fifty-three dollars and fifty-six cents, for the discount or interest thereon ; and the sum of seven hundred and eighty-one dollars and eighty-four cents, for the amount of David C. Wood's note to Jones and Smith, and interest thereon ; and should have allowed only the sum of three thousand two hundred and sixty-five dollars and ninety-five cents, as a credit on said bonds and mortgage, that being the amount of credit endorsed on the same by the complainants. This alleged omission of the master, is made the ground of the first exception to the report on the part of the complainants. These two exceptions relate to the same subject, and will be considered together.

There is no doubt as to the receipt of this money by Smith ; the difficulty is in the appropriation.

It appears that Samuel G. Wright was a tenant of David C. Wood. On the 13th day of December, 1819, he rented the furnace and lands, and a farm in Burlington, called the Green Hill farm, of Wood, for one year from the 1st of January, 1820. By this lease, he bound himself to pay, in the first place, certain sums of money to Wood, then certain claims against Wood and the property, and after paying expenses, commissions, and all other charges, to pay the remaining balance, or nett proceeds of the blast of 1820, when collected, if any there should be, to Edward Smith, *on account of his claim against David C. Wood, and the Millville furnace and property, or such part as might then be due.* It is from this agreement that Wright derives his authority to pay any money to Smith. Upon clear and ordinary principles, Wood had a right to appropriate the money thus to be paid on his behalf. It is well settled that the person making payment has the right of directing its application to the discharge of any particular demand he may think fit, provided he does it at or before the time of making the payment : but if the payment is made generally, without any such direction, then the person receiving, may apply the pay-

ment to any demand in his hands, against the person by whom, or cn whose account, the payment has been made. Within the year, and during the existence of the lease, viz : on the 14th November, 1820, Smith agreed to accept of Wood, in lieu of the balance so to be paid to him as aforesaid, the two notes of Samuel G. Wright, heretofore described, amounting to four thousand six hundred and fifty-three dollars and fifty-six cents ; and authorized Wright to pay over to Wood any balance that might remain after paying the amount of the notes.

On the 29th May, 1820, Edward Smith paid to Philip Souders, in part discharge of a judgment he had against Smith and Wood, four hundred and forty dollars and eleven cents. This judgment was obtained on one of the bonds they had given to Souders, for the purchase money of part of the furnace property. The mortgage accompanying the bonds, was a lien on this part of the property ; and it appears that when Smith sold to Jones his moiety, he took from Jones a mortgage of indemnity upon the whole premises, to secure him against any claim that might be made against him on these outstanding bonds. When, therefore, Smith paid this money on the judgment, he had a perfect claim against the Millville property for indemnity. Jones was equitably bound to pay it, as the owner of the equity of redemption. After the sale to Wood, he stood in the place of Jones. Neither of them having paid it, and Smith being legally called on, and having satisfied it, had a legal right under the agreement, as I conceive, to pay this claim out of the first moneys he might receive from Wright. The application was in strict conformity with the agreement, and the appropriation of Wood himself ; and the report of the master is correct, unless another objection raised by the counsel of Wood, shall prevail.

It is objected that the debt due to Souders by Smith and Wood, grew out of a partnership transaction, and is not to be brought in question here ; that the partnership concerns are still unsettled ; and that we have nothing to do with any other matter than the bonds and mortgage of Jones. It may be the case that this property was purchased of Souders for partnership purposes, and that the partnership concerns, strictly speaking, are not fully settled ; and yet not follow of necessity that this payment is to be considered as the payment of a partnership debt.

11

I do not think it necessary now to inquire, how this real property might have been considered in equity as between the partners themselves, during the existence of the partnership, or afterwards as between the partners and creditors. The law upon the subject does not appear well settled either in England or this country. Lord Thurlow held, in *Thornton* v. *Dixon*, 3 *Bro. C. C.* 199, that up on the dissolution of a partnership, the property would result according to its respective nature ; the real as real, and the personal as personal : and of this opinion was Sir William Grant, the master of the rolls, in *Balmaine* v. *Shore*, 9 *Ves. jr.* 500. On the contrary, Lord Eldon is represented, in 2 *Dow*, 242, to have stated it as his opinion, that all property involved in a partnership concern, ought to be considered as personal. And in the late case of *Townsend* v. *Devaysnes*, cited in *Gow on Part.* 54, and 1 *Montague*, 97, this doctrine appears to be supported by the opinion of the court. In New-York and Massachusetts it is held substantially, that real estate owned by partners, is to be considered and treated as such, without any reference to the partnership ; and that the same would go, on the death of either of the partners, or the insolvency of the firm, to pay their respective creditors at large ; 15 *John.* 159, 11 *Mass.* 469 ; while in Virginia, such property will be considered strictly as partnership property, save only as against purchasers and incumbrancers without notice. 2 *Munf.* 387.

In the case before the court, there are no claims of creditors interfering and to be settled ; and it is manifest that this property was not considered by the parties as partnership property. When, after the dissolution in 1816, they sold to Jones, they sold separately, and for different prices. They conveyed by separate instruments, each conveying a moiety. Jones, as the purchaser of the equity of redemption, became bound to pay off Smith's moiety of this debt to Souders, as well as Wood's, without any reference to their partnership transactions : so also did Quinby ; and Wood, who purchased the whole from Quinby, stands in the same situation. Accordingly we see that Wood has actually paid off and satisfied the whole of this outstanding incumbrance on the property, with the exception of this small sum of four hundred and sixty-nine dollars and sixty-three cents; and that too with his own funds. It appears also from another circumstance, that at

the time of the dissolution of the partnership, the debt to Souders was not considered by them as a partnership debt. It is not contained in the list of debts made out at the time and signed by the parties; and in the articles of agreement then entered into, provision is made for the payment of the partnership debts out of the partnership funds, i. e. stock on hand, and outstanding claims; but not for the bonds which had been given jointly and severally. These were to be paid by each party paying his half. Smith had already provided for the payment of his moiety; Jones, the purchaser, was bound to pay it for him, and had indemnified him against any claim growing out of his (Smith's) original liability. I consider the appropriation to have been properly made, and that this first exception of the defendant must be disallowed.

The first exception of the complainants is connected with this part of the case, and will now be considered. The complainants insist, that out of these notes of Wright should be deducted the further sum of seven hundred and eighty-one dollars and eighty-four cents, for the amount of David C. Wood's note to Jones and Smith, and interest thereon. This note had been paid by Smith, and it was admitted to be a note given in lieu of a partnership note, that was to be paid by Wood. Smith having endorsed and paid the note, had a just claim against Wood for the amount: whether he could retain it out of the proceeds of Wright's notes, depends on the construction to be given to the lease or agreement between Wood and Wright. In that agreement it was stipulated that the nett proceeds of the blast of 1820, should, after making thereout certain deductions, be paid to Edward Smith, " on account of his claim against David C. Wood and the Millville furnace and property, or such part as may then be due." This language, taken in connection with the circumstances of the case, is not very explicit. Taken literally, it would seem to apply to no claim save such as Smith might have against David C. Wood and the property jointly; i. e. David C. Wood and the property being both liable to pay it. Now, strictly speaking, there was no such claim. It does not satisfactorily appear that Wood was even personally and legally liable to pay the bonds of Jones, although he bought the property subject to them. This literal construction does not suit the views of either

party, and cannot be taken as the true one. The complainants say it must be taken to mean, that the surplus shall be applied to the payment of Smith's claim, either against Wood or against the furnace property. The other party insists that it means Smith's claim against the furnace property in the hands of Wood ; and which, as the owner of the equity of redemption, he was in a certain sense liable to see paid, as a part of the consideration of the purchase. I think this latter construction is the true one, not only from the words of the agreement itself, but also from the fact, that both parties appeared to consider the proceeds of that property as pledged for the payment of the claim that Smith had against it. The note of Wood, that was taken up by Smith, grew out of the partnership transactions, and I think it was clearly the intention of the parties at the time, to keep that property clear from the concerns of the partnership. The opinion is confirmed by this circumstance ; the agreement for the next year between Wood and Wright is, so far as relates to the payment of the surplus to Smith, in precisely the same words. David C. Wood afterwards represented to Smith, that the profits of the blast of the next year, (1821,) to be applied to him, would exceed ten thousand dollars. Whereupon Smith addressed a letter to Wright, informing him of this, and proposed that Wright should give him, Smith, a note for ten thousand dollars, drawn in favor of David C. Wood, which note he said he would accept, "and place the proceeds on the bonds as a credit on account of his lien against the Millville furnace property owned by David C. Wood, subject to his claim against said property." This is very explicit, and in my opinion shows clearly what was meant by the parties, in speaking of the claim "against David C. Wood and the Millville furnace and property."

But it is said that the appropriation was made by Smith at the time, and that Wood knew of it ; that in 1825, he made arrangements for paying the interest on the bonds in the hands of Hollingshead and Platt, and must have then known that the whole of the money paid by Wright had not been applied to those bonds ; that he made no objections, and of course ratified the appropriation. If this be true it will alter the case, but it should be clearly shown. What are the facts ?

On the 14th November, 1820, Smith received of Wright his two notes, the cash value of which was four thousand five hun-

dred dollars. After deducting the payment on the Souders claim, and also the payment of David C. Wood's note to Smith and Jones, he endorsed one thousand nine hundred and ninety-four dollars of the balance on the bond that became due in 1818, and the residue, one thousand two hundred and seventy-one dollars and ninety-five cents, on the bond that fell due in 1819. In July, 1823, the three bonds for ten thousand two hundred and ninety-six dollars and ten cents each, were assigned over by Smith to Hollingshead and Platt, with the interest from the 8th February, 1823. It appears by Wood's letter to Smith of 7th February, 1825, that the interest on these bonds remained unpaid, and that Smith was about to proceed by ejectment against the property. Wood then wrote to Smith that he was willing to make an arrangement with Hoilingshead and Platt, respecting the interest, and that they would take his note for the two years' interest, he paying the discount, if Smith would not proceed against the property. On the 12th February, 1825, Wood gave to Hollingshead and Platt his note for four thousand three hundred and twenty-four dollars and thirty-six cents, being just two years' interest on the three bonds of Hollingshead and Platt ; and it was insisted that at this time Wood must have known that the whole of the notes of Wright had not been applied to these bonds. The force of this argument is not perceived. It was never pretended that the money raised from Wright's notes, even if it had all been appropriated to these bonds, would have paid any part of the principal. When the assignment was made from Smith to Hollingshead and Platt, the amount that had been paid for interest, or what interest was in arrear, was not a subject of inquiry. They took an assignment of the principal of the bonds only ; all the interest due on those bonds up to 8th February, 1823, belonged to Smith, and not to Hollingshead and Platt. And in like manner, when Wood gave his note to Hollingshead and Platt, in February, 1825, the amount of the note did not at all involve the inquiry whether any, and if any how much, back interest was due on the bonds at the time of the assignment, or whether Wright's notes had been applied to those bonds or not. The note given was for two years' interest precisely. If at that time a note had been given by Wood to Smith for the arrears of interest due to him, we might have ascertained to a certainty whe-

ther Wood knew of the manner in which the Wright notes were applied ; for in the calculation of the amount of such interest, the moneys paid by Wright must necessarily have come in question. This was not done, and I have seen nothing to satisfy me that the application made by Smith was ever sanctioned by Wood.

As to the discount claimed on Wright's notes, the one being payable at six months, and the other at seven months, I think the master was correct in disallowing it. Wright was originally to pay the nett proceeds of the blast to Smith as he received them : Smith took those notes in lieu of them ; and they were no more than assumptions, that certain fixed portions of the proceeds should be paid to Smith at the several times mentioned in the notes respectively ; and they were to be appropriated when they became due.

The result is, that the first exception on the part of the complainants, as well as the first exception on the part of the defendant, must be disallowed.

This view of the case decides the second exception on the part of the complainant, and the sixth exception on the part of the defendant, both of which are disallowed.

The second exception on the part of the defendant is as follows : That the said master hath not charged the complainants, and allowed credit to the defendant, for two thousand two hundred and sixty-nine dollars and fifty-nine cents, the amount of proceeds paid by Clayton Earl, on Wood and Bacon's note, dated 1st February, 1818 ; the payments as follows :—

| | |
|---|---:|
| January 13, 1821, | $1,000 00 |
| February 5, 1821, | 398 31 |
| September 11, 1821, | 871 28 |
| | $2,269 59 |

The eighth exception is, that the master has not charged the complainants with, and allowed credit to the defendant for, two thousand dollars, Wood and Bacon's note, which was received by complainants, and ought to have been credited on the mortgages.

These two exceptions relate to the same subject matter, and will be considered together.

The case and evidence show that Clayton Earl was in possession of this furnace property for four years next preceding the

time in which it was occupied by Wright; that is, from 1816 to 1820. His accounts current for each of the four years have been exhibited by the defendant; but I have not been able to find any written agreements between Wood and Earl, as to the terms of their several contracts, as there were afterwards between Wood and Wright. That being the case, the rent or proceeds of the property must be considered as due to Wood personally and unpledged, and subject to such order and appropriation as he might make from time to time. It appears, however, that in March, 1818, Wood gave an order on Earl in favor of Edward Smith, for two thousand five hundred dollars, payable out of the proceeds of the first and second blasts of the furnace, and another for ten thousand dollars, payable out of the proceeds of the third blast. These drafts were accepted by Earl, subject to some prior acceptances, and passed over to Smith, who gave his receipt for them, when paid to be applied, first to pay interest, and next so much principal, on Joseph Jones's bonds and mortgage, on the Millville furnace and property. Here was an express appropriation of funds to that amount, and all parties were bound by it, unless it was altered by mutual consent. So long as the rights of third persons were not affected, they were at liberty to make any alterations that would better suit their views, or tend more to their advantage. Let us examine, then, whether any such alteration was made in regard to these funds as will warrant this payment to Smith for the purpose to which it was applied.

On the 19th February, 1818, Clayton Earl addressed a letter to Wood and Bacon, informing them that Edward Smith and William Jones, creditors of David C. Wood, required a reduction or payment of one thousand six hundred dollars to be made on Wood's notes, on which they (Wood and Bacon) were endorsers, besides one thousand three hundred and fifty dollars which Smith required to be paid on the Souders bonds. These sums, he remarks, are more than he had intended to engage to pay, but he had told David C. Wood that if he would give him (Earl) Wood and Bacon's note for two thousand dollars, payable 1st February next, he would then engage to pay those sums; and that the note was to be held as collateral security, and not to be made use of, if he could reimburse himself from the proceeds of the furnace by that time, or even a

July, 1830.

Smith et al.
v.
Wood.

little longer. A note was accordingly drawn by Wood and Bacon, in favor of Clayton Earl, for two thousand dollars, payable 1st February, 1819. This note was afterwards endorsed by Clayton Earl, to Edward Smith or order, without recourse to him. When this was done, does not appear from the endorsement; but Earl says, in his examination, that after he (Earl) received the note, he declined paying Edward Smith the amount he had agreed to pay him, though much pressed by Smith for the money, but that he passed the note itself to Smith, and afterwards paid it off in different payments, as appears by the endorsements on the note. Earl says further, that he believes Wood, the defendant, was present when this was done, but he will not be positive : he can say this much, however, that it was made known to David, and he never made any complaint. He says that it was an understanding between D. C. Wood, and Wood and Bacon, and himself, that he should pay the amount of this note to E. Smith, as he should have funds to meet it. He did not understand from either of the parties, that this note was to be applied to the payment of Jones's bonds. His impression was, "that it was to liquidate certain debts which Ed. Smith had paid for D. C. Wood at the different banks ; that they had dissolved their partnership and lessened those notes which were to be paid and were coming due ; and that when David could not meet those which he was to pay, Edward had paid them, and that there was a running account between them for the moneys so paid." On his cross-examination, the witness says; " I recollect no distinct agreement between Mr. Smith and Mr. Wood, as to the manner in which this two thousand dollars was to be appropriated, when it was paid to Mr. Smith. The impression of which I have spoken in my principal examination, results from David C. Wood having frequently applied to me for small sums of money, to meet the reduction of his notes at the different banks. Sometimes I accommodated him, and sometimes I did not." In connection with this testimony, there is an account current between Wood and Smith, which is in evidence, and shows that this note was appropriated by Smith at the time, and in what way. By this account it appears, that on the 9th May, 1818, Wood was indebted to Smith for moneys loaned him to

pay discounts and take up notes endorsed by Smith, in the amount of three thousand six hundred and one dollars and eighty-nine cents. On the same 9th of May, Smith credits Wood with the amount of Wood and Bacon's note, less the discount for nine months, at which time it would be due ; and on the same day he credits Wood with Wood's own note of same date, for one thousand seven hundred and eighteen dollars and thirty-nine cents, less the discount, equal to one thousand six hundred and ninety-one dollars and eighty-nine cents cash, which he says is the balance of the account due him, after crediting Wood and Bacon's note. Adding together these two notes, the sum exactly corresponds with the amount then appearing to be due from Wood to Smith, on their running account. It appears also by Wood's own note book, that this last note for one thousand seven hundred and eighteen dollars and thirty-nine cents, was actually given by him to Ed. Smith on the 9th of May, 1818. If this last note was given by Wood understandingly, and we are not at liberty to dispute it, it is hardly possible to escape the conclusion that he knew of the purpose to which the Wood and Bacon note was to be applied.

If all these circumstances, taken in connection, do not prove an absolute agreement between the parties, they do at least lead to a satisfactory conclusion, that this appropriation was made with the express knowledge and consent of Wood ; and having already received a credit for the amount, it would be unjust that he should be allowed it again, as a payment on the mortgage.

Under this view of the case, the second and eighth exceptions of the defendants are disallowed.

The third and fourth exceptions of the defendants relate to two several drafts of David C. Wood on Clayton Earl, and in favor of Edward Smith, for ten thousand dollars each:

The first draft is in the following words :—

PHILADELPHIA, March 9, 1818.

To CLAYTON EARL.

When in funds, after reimbursing your advances which you have already made, or may hereafter make, for carrying on the ensuing contemplated blast at Millville furnace,

Please pay to Edward Smith or order, ten thousand dollars, or

12

as much thereof as may remain in your hands after reimbursing yourself the above advances, and paying my draft in favor of Henry B. Kemble, for nine hundred and seventy-nine dollars, and oblige

$10,000.                                                    DAVID C. WOOD.

This draft is accepted by Clayton Earl, as follows :—Accepted March 9, 1818.                                        CLAYTON EARL.

It appears by the receipt given by Smith to Wood for the draft, that the acceptance was on the draft when he received it; and in the receipt Smith promises that the draft, when paid, or any part thereof, shall be applied first to pay interest, and next so much principal on Joseph Jones's bonds, secured by mortgage on the Millville furnace and property. Five several payments were made on this draft between the 16th January, 1822, and the 17th June, 1823, inclusive, amounting in the whole to three thousand one hundred and thirty-three dollars and sixty-nine cents; leaving a balance unpaid of six thousand eight hundred and sixty-six dollars and thirty-one cents. The master, in taking the account, has charged the complainants only with the sums received on the draft, and not with the amount of the draft itself. The defendant, Wood, alleges that this is an error, and insists that the complainant, Smith, by his own acts made himself accountable for that sum ; that Clayton Earl received more than the amount of the draft on account of the blast, and that Smith was requested by the defendant to proceed against Clayton Earl for the same ; and if the balance of the draft has been lost, it has been owing to the neglect, negligence and default of the said complainant.

In order to ascertain the rights and duties of the parties, it becomes necessary to inquire into the nature of the instrument given by Wood to Smith, and accepted by Earl.

It is not a regular bill of exchange : it is payable out of a particular fund; which is contrary to an established principle regulating that kind of commercial paper, that the credit is given to the drawer or endorser, and not to the fund. The acceptance being general, does not alter its character. The acceptance must necessarily follow the nature of the draft. *Dawkes v. Deloraine*, 3 *Wils.* 213.

Again—This order or draft did not go to extinguish the precedent bond debt. On the receipt of this order by Smith, Wood

could not have compelled Smith to credit the amount of it on his bonds. The receipt given by Smith to Wood at the time,. precludes that idea. But independently of that, the law is well settled, that the acceptance of such an order is no payment of a precedent debt; 1 *Salk.* 124; *Ward* v. *Evans,* 2 *Ld. Ray.* 928; *Smith & Marshall* v. *Rogers,* 17 *John. Rep.* 340.

Our statute relating to bills of exchange and promissory notes, has no application to this case. The enactment contained in it—that the acceptance of an inland bill of exchange, in satisfaction of a former debt, shall be accounted a payment, if the person accepting it do not take his due course to obtain payment by endeavouring to get the same accepted and paid, and make his protest in case of non-acceptance or non-payment—does not affect the question. This instrument, as we have seen, was not a bill of exchange; and there could be no protest for non-payment, for the time of payment was altogether indefinite.

But it is contended on the part of the defendant, that although this is not a bill of exchange, strictly speaking, under the statute of Anne, and though the acceptance of it did not operate as a payment of the precedent debt, yet that Smith, the holder, has been guilty of laches. He ought to have shown that he had used reasonable diligence to collect the money, and that he gave notice to Wood of the non-payment; that not having done this, he has by his own conduct made the acceptor his debtor. In support of this position the case of *Chamberlyn* v. *Delarive,* 2 *Wils.* 353, is relied on. In that case, the defendant being indebted to the plaintiff, in eighteen pounds, for work done, gave the plaintiff a note or draft upon one Heddy, desiring him to pay the plaintiff a few days after date, eighteen pounds, for value received. The plaintiff took, and held the draft, four months, and never applied to Heddy to demand the money of him. Heddy then broke and became insolvent. The court held, that the plaintiff, by accepting this note or draft, undertook to be duly diligent in trying to get the money of Heddy, and to apprize the defendant if Heddy failed in payment; and that the defendant had been deluded into a belief that the plaintiff had got the money of Heddy. The court say further, there is no reason applicable to the case of holding a bill of exchange, that is not appli-

cable to that case ; the plaintiff, by holding this order four months, has discharged the defendant of his debt, and credited Heddy in his stead.

There can be no doubt, that the true question in the cause now before the court, is, whether the acceptance of the draft, under the circumstances attending it, imposed on Smith the duty of using reasonable and due diligence in collecting it ; and whether such diligence was, or was not used.

The case from 2 *Wilson*, goes far to show the necessity of diligence on the part of the holder : but it differs from this, in some very important particulars. It was a general draft, not payable out of any particular fund, and not dependent on any subsequent contingency. The credit was given to the person who was to pay, and not to the property out of which it was to be paid. It was due at a particular time, and notice of non-payment could have been given, because the time of payment was fixed. The only distinction between it, and a regular bill of exchange, was, that it was not payable *to order*. Still it was a case not within the statute, and the principles of mercantile law were not applied to it by the court, and therefore it is entitled to some consideration.

*Clark* v. *Mundal*, 1 *Salk*. 124, was before the statute of Anne. The court held, that the receiving of a bill of exchange, should never go as payment of a precedent debt, although it had lain long in the hands of the person receiving it after it was payable, and had been reckoned as money paid, and in his hands.

The case of *Smith & Marshall* v. *Rogers*, 17 *John*. 340, is in principle very similar to the present.

Smith and Marshall sold to Rogers and Bemont, in April, 1816, a quantity of merchandize. On the 22d April, 1816, Bemont wrote to them that the partnership was dissolved, and that he had assumed the demand, and would pay it as soon as possible. The plaintiffs answered, that they were satisfied with that arrangement. On the 9th July, Bemont sent to the plaintiffs one hundred dollars, to be applied to the payment of the debt. In August, he gave his own note to the plaintiffs for six hundred dollars, payable on demand, for which the plaintiffs gave him a receipt, when paid, to be placed to the credit of Rogers and Bemont's account. In November, 1817, Bemont became insolvent,

and then, and not before, was Rogers, the partner of Bemont, called on for the payment of the balance of the account. No suit was brought against Bemont, for the recovery of the note. The court held, that taking the note was no discharge of the original debt; that the liability of the firm still continued, and that by the consent of all parties, as manifested by the receipt given; that it was the duty of Rogers to see that Bemont complied with his engage‑ ment, as to the payment of this debt; and that the plaintiffs were in no default, for omitting to call on Rogers until Bemont's in‑ solvency.

I think this is the correct rule, as applicable to the present case. Wood's debt to Smith remained, notwithstanding the or‑ der. Earl contracted with, or promised Wood, to pay to Smith, ten thousand dollars of Wood's debt. It was clearly a contract between Earl and Wood; Smith receives it from Wood with the acceptance on it, and promises to apply the money in a particu‑ lar way, whenever Earl shall pay it. On whom, then, devolved the duty of seeing that the money was paid? Could Smith sue Earl on this acceptance? At what time could he have brought his suit? How was he to make out when Earl was in funds, af‑ ter reimbursing his advances and prior acceptances? When was he bound to notify Wood, that Earl had not paid the order? And after such notification, what course was he to pursue to obtain his money? My opinion is, that, even if Smith had made no one effort to procure the money of Earl, he would not be chargeable with any loss, and the present claims upon the bonds would be unimpaired. This opinion applies equally to the draft of 1819, which was similar in its character to the first, and on which nothing has been paid.

Let us now examine, whether it be true that Smith, after receiv‑ ing these drafts, folded his hands, and waited the movements of Clayton Earl, without making any efforts to induce payment.

Earl, in his examination, says, that Smith importuned him very much for money on the drafts, and told witness, that from his own accounts, there was more than enough in his hands to pay the ten thousand dollars. Witness replied, that he could not hold two securities at once; that if he (Earl) was pressed to pay the money, that Smith should assign over to him one of the ten thousand dollars bonds. Samuel G. Wright says, he

has often heard Smith and Wood talk about the drafts that Wood had given to Smith, on Clayton Earl; and Wood would ask him, why he did not sue Clayton. These conversations occurred frequently, and Wood would turn Smith off, by saying, why don't you sue Clayton. This was during the years 1820, 1821, 1822. When Wood would ask Smith why he did not sue Clayton, Smith would reply, that Clayton said he had no funds. From this evidence, it cannot be doubted, that Smith made frequent applications to Earl for the payment of the drafts; and that Wood knew they were unpaid; and knowing they were unpaid, and that Clayton refused payment, and alleged the want of funds, it was his duty to have taken up the drafts, and made Earl account to him for the funds. Even if negligence could lawfully be charged, in a case of this kind, against Smith, I am of opinion the evidence does not present that gross default, which would render Smith wholly responsible for the amount due on these drafts, and compel him to credit it on the bonds. I do not think, that even Wood himself, could at that time, have seriously pretended that Smith, holding as he did the mortgages in his own hands, was bound to enter into a protracted litigation with Earl, which must have involved all the accounts between Earl and Wood.

It appears, however, that on the 1st of March, 1825, after the various conversations that have been mentioned by the witnesses, Wood addressed a formal letter to Smith, enclosing, as he says, the accounts current, showing the amount of funds in Earl's hands, at that date, to be sixteen thousand nine hundred and nineteen dollars and fifty cents; and informing Smith, that he shall expect him to account for that amount, on the three orders drawn by Wood on Earl, in favor of Smith—one for two thousand five hundred dollars, and the others for ten thousand dollars each. To this, Smith replied, that he did not hold himself liable for any sum in Earl's hands, until he received it, and then it should be applied to pay the Jones bonds; and asks direction how to proceed if Earl should object to the balance. Very soon after, Smith exhibited the account to Earl, who denied the correctness of it, and alleged, that on a settlement there would be a balance in his favor.

If Wood really considered Smith liable for the amount of these

drafts, (in the whole, twenty-two thousand five hundred dollars,) he must have considered, that so much was paid on the bonds; and of course, that they were reduced by that sum. One of the large bonds must then have been paid off, and the greater part of another; and yet we see, that on the 12th February, only sixteen days before, he had made formal provision for the payment of the whole interest due on the three large bonds, and which were assigned over to Hollingshead and Platt; and actually gave to Hollingshead and Platt his own note for the precise amount. Now, Wood must have known, at that time, that neither of the drafts of ten thousand dollars, had been applied to these bonds. What occurred in the interim, between the 12th of February and the 1st of March, either to fix the liability of Smith, or to alter the views of Wood, does not appear. On the whole view of this part of the case, I am satisfied, that it was never the intention of the parties, that Smith should be charged with the amount of these drafts, unless the money was received from Earl; and that they were viewed by them as special agreements, (as Wood himself calls them,) between Wood, and Earl, and Smith; whereby, Wood agreed to appropriate a certain portion of the proceeds of the property, to the payment of Smith; Earl agreed with Wood to pay it according to his direction; and Smith agreed to receive it, whenever it should be paid, and make of it a proper application.

The third and fourth exceptions are disallowed.

The fifth and seventh exceptions were not insisted on.

Let the report stand confirmed.