Jackson, J.,
delivered the opinion of the Court.
[ *.472 ] *The plaintiff and his assignee having released to the purchaser under the defendant all their right to the land in question, if the creditors of the partnership, or the plaintiff, for their use and benefit, might, by any lawful means, have taken this land, and applied it towards the discharge of their debts, the plaintiff is to recover. The question is not confined to the actual state of the title at the commencement of the action; for, if those creditors could hold the land under the assignment made by the plaintiff, or if they might have taken it in execution after the death of the defendant’s intestate, in either case the proceeds of the sale are to be recovered for their use.
By the principles of the common law, which have been recognized here, (7) the joint fund is first liable for the partnership debts; and a separate creditor of one of the partners can claim no more than the just proportion of such partner in the joint fund, after the joint debts are paid. The question, then, is, whether this land was part of the joint fund or partnership stock, so as to come within the rule.
The debts for which this land was originally mortgaged to the *425 partners were part of their joint stock; and they were accordingly joint-tenants of the mortgaged premises ; so that, on the death of one partner, by which the debt survived, the remedy on the mortgage survived also. This was decided in the case of Appleton \'t>. Boyd, cited for the plaintiff, and we are perfectly satisfied with that decision.
But it does not necessarily follow that the estate continues joint after a foreclosure of the mortgage, when it ceases to be a security for a debt. The same reason no longer exists. The mortgage is not used nor wanted as a remedy, which must follow the nature of the right. The land is no longer a pledge; but the title is vested absolutely in the mortgagees. Whilst it continues a pledge, it is a mere incident to the debt; and either partner, by releasing the debt, * would, in effect, release the mortgage, [ * 473 J and destroy their joint title and estate in the land.
Although, as between the mortgagor and mortgagee, the latter is considered as seised of the land, yet, to most purposes, his estate is merely a chattel interest, following the nature of the debt. As to all the world, except the mortgagee, the mortgagor is considered as the owner of the land, until an actual entry under the mortgage ; and his right of redemption, for three years after entry for the condition broken is not a mere equitable claim, but is secured to him by statute. The foreclosure operates as a new purchase by the mortgagees. They acquire thereby an absolute title to the land It is no longer an incident to the debt; nor is it connected with it any more than if the partners had received payment of the debt, and had laid out the money in the purchase of the land. A release or conveyance by one partner would pass only his right or interest in the land, and would not bind or affect the title of his companion.
This is not an uncommon mode of acquiring a title to land. If a man wished to purchase land that was mortgaged, he would, of course, take an assignment from the mortgagee ; and if the amount of the debt was equal to the supposed value of the land, he would not pay the mortgagor for a release, but would extinguish his right by a foreclosure, according to the provisions of the statute. If two men should make such a purchase, their interest must be joint until the foreclosure, whilst the land remained a pledge, for the reason before given ; but it would be manifestly contrary to their intent, if their estate should be considered joint, after their title became absolute. They have a joint estate in the pledge; because that construction is necessary to effect their manifest intention ; as, otherwise, the mortgage would not be a security for the debt, in the hands of the survivor, when the debt survived to him. But no such reason applies to the estate subsequently acquired; and therefore *426 [ * 474 ] * the general rule established by the statute of 1785, c. 62, applies; and they are tenants in common.
It was said," in the argument for the plaintiff, that, as the partners held the land jointly when it was first mortgaged to them, the nature of their title and estate cannot be changed by mere lapse of time, and therefore they must continue joint-tenants. This argument, if well founded, would go to show that there was not any new purchase, or new title acquired, as we have supposed. In question's relating to mortgages, which are peculiarly of chancery jurisdiction, and as to which the legislature have given to this Court extensive chancery powers, we should yield with reluctance to a technical rule in conveyancing, when it was found inconsistent with the manifest equity and justice of the case.
In the present case, however, no such difficulty occurs. If any new act or ceremony is required, in order to change the nature of the estate in the mortgagees, or to give them a new title, their entry for the condition broken may be considered as such act. They do, in fact, acquire by it a new and different estate in the land. No lapse of time, without such entry, would ever give them an absolute estate. Even if the mortgagee enters before condition broken, as he may if there be no agreement to the contrary, no length of possession under such an entry will make his title absolute. He can never become the owner of the land unless he elects to be so, and makes a formal entry for the condition broken in the presence of witnesses, or enters, in virtue of an execution, on the mortgage deed.
The mortgage, then, may be considered as conveying to the mortgagee the rents and profits of the land, to be received, if there be no agreement to the contrary, towards the discharge of his debt, whether the condition is broken or not; and also as transferring to aim a right of entry for the condition broken. On the happening of that event, if he thinks proper to make such an entry, he acquires a new right to the land, which can be defeated only by payment of the debt, within the three years limited by the statute.
[ *475 ] * It is true, that the mortgage deed purports to convey
to the mortgagee a present estate in fee simple, defeasible on the performance of a certain condition by the mortgagor. But according to the construction of the instrument, which has been long settled in our courts, and which is warranted by the statutes relating to the subject, the mortgagee, instead of having an estate in the land defeasible on performance of a condition subsequent, has the right of acquiring an estate on a certain contingency, and on the performance of a condition precedent on his part. His title, when thus perfected, relates back to the date of the mortgage deed, so as to avoid intermediate encumbrances; in like manner as or. *427 execution levied on land has relation back to the date of the original attachment. But in both cases, the creditor has only a lien on the land, and not any estate in it, strictly speaking, until he actually takes the land in legal form, towards the discharge of his debt.
We are therefore satisfied that the estate of the two partners m this case, after the foreclosure, was the same as if this land had been conveyed to them absolutely, by a deed in common form; and the only remaining question is, whether the consideration for it, having been paid by them out of their partnership effects, will make any difference.
If one partner had taken out of the joint stock a certain sum, and purchased land with it to his own use, this land would not be joint stock. The other partner might afterwards do the same, and he land so purchased by him would be his separate estate, each of them, in such case, being debtor to the partnership for the amount thus appropriated. It is not, perhaps, easy to see why the result should differ, if they both do this at the same time, and take one conveyance to themselves as tenants in common. In either case it would be, in effect, a division of the joint stock pro tanto. They have the power to divide the stock, whenever they choose to do so; and each with his own part may pay his separate creditors, although there be not sufficient to pay * the joint creditors. It would only be the common case [ * 476 ] of men owing more than they can pay, and preferring one creditor to another, which they have always the power to do by our laws.
But, however this might be considered, whilst both the parties were living, and although a court of chancery might, in that case, apply real estate so purchased to the discharge of the joint debts, yet, in the present case, the death of one partner removes the only equitable motive or reason for such a disposition of this property.
By the statute of 1799, c. 57, the joint creditors have the same remedy against the estate of Whiting in the hands of his administrator as if Whiting alone had been their debtor. His moiety, therefore, is not withdrawn from them, by going into the hands of his administrator; but they may prove their whole debts, and receive their dividends out of his estate, pari passu, with all his separate creditors. It would be most manifestly unjust towards those separate creditors, if an estate, which was legally the property of Whiting, should, under such circumstances, be taken out of the only fund to which they can resort, and be applied to increase the dividend of the joint creditors. We are well satisfied that the law does not require any such disposition of the property now in question ; and that the defendant has a right to hold the proceeds of *428 the sale made by him, for the payment of all the creditors, who shall duly prove their debts under the commission of insolvency on Whiting’s estate.
According to the agreement of the parties, the plaintiff must become nonsuit, and the defendant must have judgment for his costs, (a)

Plaintiff nonsuit.

 6 Mass. Rep. 242.

 But it is otherwise in equity. — Smith vs. Smith, 5 Ves. 509.—Ripley vs. Waterworth., 7 Ves, 425. — Bell vs. Phyer, 7 Ves. 453. — Balmain vs. Shore, 9 Ves. 500. — Lake vs. Craddock, 3 P. Will. 158. — Townsend vs. Devaynes, Mont. Part. 97. — Selkrig vs. Davies, 2 Dow. 242.— Thornton vs. Dixon, 3 Bro. 199. — Alden vs. Fouracre, 3 Swanst. 489.— Featherstonhaugh vs. Fenwick, 17 Ves. 298. —Foster vs. Hale, 3 Ves. 696. — 5 Ves. 308. — Cary's Parta. 26, 27, 166. — Gow, 3d ed. 33, 232. — Ford vs. Herron, 4 Munf. 316. — Hart vs. Hawkins, 3 Bibb, 506.