Tucker, P.
In the view which I take of this case, it is altogether unnecessary to enter upon the enquiry, so earnestly prosecuted in the argument, of the power of a court of chancery to change the real estate of an infant into personal, by a sale of his inheritance. I beg leave, however, to state my impressions on the subject, as it has been so earnestly pressed.
Notwithstanding the difference between the powers of the english chancellor over the estates and persons of infants, and those which are exercised with us by the superior courts of law and chancery, I shall not rest my opposition to the power which is claimed, solely upon that difference. It is indeed a grave consideration, that if the power exists at all, it is peculiarly within the province of the county courts, who alone possess the power of appointing guardians, and before whom their accounts are to be audited and passed. Yet it would seem questionable whether it could ever have been intended by the legislature to give so broad a discretion to the county court, (organized as it is,) to sell the landed estate of an infant, at the instance perhaps of an interested and unprincipled guardian, or of designing connexions and friends.’ It is, I think, notorious that no such power has ever been exercised in Virginia, except under the particular provisions of the statutes, 1 Rev. Code, ch. 96. § 20. Id. ch. 108. § 16-23. pp. 358. 409, 10. It is notorious, that until the passing of these statutes, no sale of an infant’s real estate was ever made except under the .authority of a private act of assembly i and both these statutes distinctly indicate the legislative understanding, that the power asserted -could only be exercised under legislative authority.
I take, however, a broader ground. I deny that there is any power in the chancellor of England to sell an infant’s inheritance upon the pretext that the sale will be for his advantage, if we are justified in denying the *420 power by the dictum of one of their ablest chancellors, sustained by the fact that no instance of such a sale is to be found in their judicial history. Cases indeed are ~ . . r , , numerous or the conversion of money and other personalty into real estate, though even the exercise of this power is fenced about with rules to prevent its curtailing the infant’s legal powers, and to secure the succession of the estate as if no such conversion had been made. Earl of Winchelsea v. Norcliff, 2 Freem. 96. S. C. 1 Vern. 435. Ex parte Phillips, 19 Ves. 122. So, too, there are instances of authority to cut timber on the lands of an infant tenant in tail: but this on the one hand involved no difficulty as to the execution of conveyances, and on the other it has probably been regarded in the light of one of the profits of the estate, since the tenant in tail is "not impeachable for waste, and as he may die without issue, the fair benefits of the estate may be lost to him, as the inheritance must pass over to another. There are other cases, also, respecting timber on fee simple estates, which is permitted to be cut and sold to raise a fund for repairs; but this, it is obvious, is far different from the conversion of the inheritance by sale out and out, which involves a power to execute a deed for the infant, or a power to compel him to execute it, nolens volens, when of age. Cases occur, loo, in which there is an election in an infant to take land or money, and the court elects for him. Turner v. Street, 2 Rand. 404. But there the legal title is not in the infant: it is in some other who is bound as trustee, and must convey as the court directs: and as to the infant, until election, non constat whether the estate is real or personal, and the election for him, therefore, operates no conversion. But the power to decree a sale of the inheritance out and out, and a conveyance of title by a commissioner, or by the infant himself when adult, in invitum, is disclaimed by one of the first judges of England. In Taylor v. Philips, 2 Ves. *421 sen. 23. lord Hardwiclce said, “ There is no instance of this court’s binding the inheritance of an infant b}7 any discretionary act of the court. As to personal things, as the composition of debts, it has been done; but never as to the inheritance; for that would be taking on the court a legislative authority, doing that which is properly the subject of a private bill.” And when Chetwynd’s case, 1 Bro. P. C. 300. was mentioned, he took the distinction—“ There was an election to be made; something was necessary to be done. I remember I w7as of opinion with the decree, when it came afterward in the house of lords.” It is said that this was but a dictum; yet if so (and that does not appear) it was the dictum of a great man, and is more solemnly repeated in another case. And what are the contrary opinions but dictad Some of the judges assert the power to change the nature of the infant’s property, but not an instance is to be found in the english books of such a change of realty, except in the qualified manner above mentioned. Nor have I met with such an instance in the decisions of our sister states, except that in 3 Desauss. 22. which is unsupported by any previous case. Upon the whole, therefore, I cannot think the decree for sale in this case is sustained by the existence of the power which has been so zealously asserted.
I proceed to the next question which arises in this case, and which is no less interesting than the former. Is freehold estate, purchased by partners in trade for partnership purposes, and so used, to be considered, on the death of one partner, as personal estate devolving upon the surviving partner, and subject to distribution as other personal estate of the firm ? On this subject there has been much diversity and fluctuation of opinion. The early cases looked upon lands purchased for partnership purposes out of partnership funds, as personal estate. Jeffereys v. Small, 1 Vern. 217. Lord *422 Thurlow thought otherwise, unless there was an express agreement. Thornton v. Dixon, 3 Bro. C. C. 200. Sir William Grant followed him in two cases; Bell v. Phyn, 7 Ves. 453. and Balmain v. Shore, 9 Ves. 500. After this, lord Eldon, in several cases, seems to have been undecided upon the question ; but at length in Selkrig v. Davies Salt, 2 Dow’s P. C. 242. he is said to have declared his opinion that real estate so circumstanced ought to be considered as personal. Subsequently, however, he once more doubted in Crawshay v. Maule, 1 Swanst. 508. 521. though he had before decided, in Townsend v. Devaynes, cited in Montague on Partn. 97. that such was the law. On the foundation of this opinion, the principle was recognized in England in the case of Phillips v. Phillips, 1 Mylne & Keene 649. 7 Cond. Eng. Ch. Rep. 208. after an able argument by the bar, and a full consideration by sir John Leach, master of the rolls. I think, then, the doctrine laid down in Gow on Partn. 51. and 3 Kent’s Comm. 37. may now be taken as settled in England; namely, that real estate purchased for partnership purposes with partnership funds, and used as a part of the stock in trade, is to be considered to every intent as personal property, not only as between the members of the partnership respectively, and their creditors, but also as between the surviving partner and the representatives of the deceased. The legal title may indeed be in the heir, but let the legal title be in whom it may, it is in equity deemed partnership property, and the partners are deemed cestuis que trust thereof, while the holder of the legal title is but a trustee for the partnership.
This doctrine is perfectly reasonable, is founded in justice, and is entirely consistent with equitable principles. For the purchase having been made with partnership funds for partnership purposes, it is a purchase by one or by both, for the benefit of both in their social character, and to whomsoever the legal title may *423 be conveyed, he becomes trustee, not for himself and his copartner as individuals, but for the partnership itself, considered as a separate and distinct person, invested with rights separate and distinct from each of the partners. This artificial person, then, being the cestui que trust, has all the rights of a cestui que trust. The complete ownership is in it. It can sell this portion of the partnership stock at pleasure, but neither partner can lawfully sell his moiety, though, if the legal title be in him, a purchaser from him without notice will be protected, as in the case of purchases from other trustees. Thus we see that in the individual partners there is but a naked legal title, and of course, upon the death of one, a mere legal title passes to his heirs, while the whole beneficial interest passes to the survivor, for the purposes of the partnership in the first instance, and when they are satisfied, the surplus is to be divided between himself and the representatives of the deceased partner. But until the concern is wound up, the whole control of the partnership stock is in the survivor, unless for adequate cause his powers are restrained or superseded by a court of equity. Gow on Partn. 378. Possessing this control, being now the sole cestui que trust (though liable to account with the representatives of the deceased partner) he has the right to sue the trustee (the heir at law) and to compel a sale for the purpose of distribution. The representatives of the deceased partner, indeed, may also insist upon a sale, if the surviving partner is backward. Gow 256. But beyond doubt, the survivor may apply to equity to decree a sale. For neither party has a right to compel a division of the specific subject in kind, or require the other to accept what, according to a valuation, his interest may be worth. Gow 257. Equity always directs the value of the subject to be ascertained in the way in which it can best be ascertained, namely, by sale and conversion into money. *424 Gow 257.Crawshay v. Collins, 15 Ves. 226. Crawshay Gow 257. v. Maulé, 1 Swanst. 506.
are these personal representatives who And who ' must be made parties, and to whom the distributable surplus is to be paid ? There is no question that the interest of the deceased in so much of the partnership stock as in its nature is strictly personal, must pass to the executors. But, as already observed, it has been a vexed question in England, whether the interest of the decedent in the real estate belonging to the firm, and the proceeds of the sale of that interest, belong to the personal representative or to the heir. The better opinion gives the fund to the former; and with reason; since, upon familiar principles, as the land was purchased with the personalty and was brought into the firm as stock, it ought, as between the executor and the heir, to replace the fund withdrawn from the personal estate. By placing it as stock in a partnership fund, the deceased evinced a design to treat it as personalty, and it ought to go accordingly. The representatives of the deceased can only claim it as stock; and as stock in trade, it is, ex vi termini, personal.
This has beeu the real point of difference between the judges in England. I think that a doubt is no where expressed, that as between the survivor and the personal representative, the real property is to be taken as personalty, and dealt with as such., On the contrary, this seems to be a concessum in argument. See Phillips v. Phillips, 1 Mylne & Keene 649. 7 Cond. Eng. Ch. Rep. 210.
With these views of the 'english law, let us see whether there is any decided case in Virginia, which is at •war with the doctrines of that law. I say in Virginia; for the decisions of our sister states are conflicting, and the opinions of two most eminent jurists propound, as the true principles, the doctrines of Westminster hall. See Coles v. Coles, 15 Johns. Rep. 159. and Goodwin v. *425 Richardson, 11 Mass. Rep. 469. which stand, I think, alone; and M’Dermot v. Laurence, 7 Serg. & Rawle 438. which may be referred, I think, to the principle of Forde v. Herron, 4 Munf. 316.— Winslow v. Chiffelle, South Car. Eq. Rep. 25. M'Alister v. Montgomery, 3 Hayw. 96. Greene v. Greene, 1 Hammond’s Ohio Rep. 535. are said to follow the principles of the english courts.
In Virginia there are but few cases on the subject. In Edgar v. Donnally, 2 Munf. 387. a right to land had been acquired with partnership stock, and a title taken in the name of the survivor. A claimant under the deceased partner was held entitled in equity to a moiety of the land, against a purchaser from the survivor with notice of the partnership right. In Forde v. Herron, 4 Munf. 316. the character of the property, and its liability to the partnership demands, are admitted, though it is decided that if the parties take their deeds in such form as not to disclose the connexion of the title with the partnership, a purchaser without notice will be protected against the partners or their creditors. Lastly comes the case of Deloney v. Hutcheson, 2 Rand. 183. That case was decided by a court of three judges, and only one of these touched upon this question ; nor was it necessary to the decision of the cause. The opinion of judge Green, however imposing, does not appear to me to be sound. He seems to take the rule in equity in England “ to depend upon the existence there of the jus accrescendi in lands, whereby, upon the death of one partner, the legal title to the whole is vested in the other; and that if the representatives claim the advantage of the principle of equity which considers the joint interest of partners as an estate in common, they must submit to pay to the surviving partner whatever is due him upon the partnership transactions. In Virginia, there being no jus accrescendi, the legal title is in the heirs, and the repre *426 sentatives therefore can be put under no such conditions.” With the most profound respect for the opinions of this able judge, I apprehend the rule in England rests on entirely different grounds. Where a purchase is made by partners with partnership funds, for the purposes of the partnership, it is admitted by the learned judge that there is a trust for them in their character of partners, although the conveyance be to the partners in their individual characters; and I will add, that although the purchase was made in the name of the deceased partner, yet he is held but a trustee for the partnership concern. Gow 255. Smith v. Smith, 5 Ves. 189. In that case, the conveyance was made to one of the partners, and the question was whether his wife had a right of dower. The court decided that she had, but upon the specific provisions in the deed, which proved that the purchase was made with the express agreement that her husband, to whom the deed was executed, should not hold for the firm, but in his own right, and be held debtor to the firm for the money advanced. The chancellor held that but for this specific agreement, “ although the deed was taken to one of the partners, the estate would have been regarded as partnership property,” and so the wife would not have been entitled to dower. See also sir S. Romilly's argument in Bell v. Phyn, 7 Ves. 456.
A case has been mentioned by my brother Parker, of Taylor v. Thomson, not reported, in which this court allowed dower to the widow of a partner who had purchased property with the partnership funds. I did not sit in that cause, having been concerned in it in the courts below, and my recollection is very imperfect as to the facts. One important fact I do remember. The estate purchased was a valuable farm, the conveyance of which was made to Taylor alone. It was not bought for partnership purposes, nor so held, although it was paid for, I think, out of partnership *427 funds. It resembles therefore the case of Smith v. Smith, 5 Ves. 189. and it is probable the court considered Thomson as having a mere equity to charge the estate, which could not prevail against the widow’s legal right of dower. Be this as it may, the facts of the case are too obscurely recollected to enable me to follow it as a guide.
Upon the whole, I am of opinion that the late english cases propound the true rule, and that real estate purchased with partnership funds and for partnership purposes, must be regarded as partnership stock, and treated as personalty.
We come now to look to the character of this case as disclosed by the record. That the houses and lots in the proceedings mentioned were purchased with partnership funds by the partners jointly, sufficiently appears, I think, from the whole of this record. The bill states that during the life of Trigg, a mercantile partnership existed between him and Henderson: that during its existence they purchased the lots, which were conveyed to them jointly, arid occupied by them for some time. The guardian ad litem yet more distinctly states, that the houses and lots were purchased out of the joint funds of the said partners, and wTere always considered as forming so much stock in their trade, and the most valuable was made use of by them as a storehouse. The statement of the guardian ad litem cannot prejudice the infant, it is true, where he contests it in his own subsequent answer. But in the answers in this case, it is not alleged that the facts stated by the guardian were untrue or mistaken, but the objection made is that the firm was not indebted, and that therefore no sale was necessary; clearly implying that the property was liable to the debts of the firm, had a sale been necessary for their payment. And moreover, in the cross bill filed by one of the heirs, they allege that the property was bought during the continuance of the part *428 nership, out of the partnership funds, and they contest the sale oh the ground that Henderson ought not to have been permitted to take any portion of the real property which had been bought with partnership funds and ought to be considered as part of the mercantile capital. Now the cross bill is part of the defence, and has always been so considered. 3 Atk. 812. In answering this charge in the bill, the defendant Pierce also admits that the property was mercantile property, procured with the partnership funds; so that the fact seems to be conceded by all the parties in the cause.
But it is contended that this case is not made by the bill, and that though such was the fact, it did not appear by any proofs in the cause at the time the decree was rendered, and so the decree was erroneous and ought to be set aside. I do not think the conclusion is warranted by the premises. The infant defendants are permitted to come in and shew cause against the decree ; and if they bad shewn this for cause, without more saying, it would have been difficult to sustain it. But when, instead of doing so, they set forth facts in their answers which fully sustain the decree; when they go farther, and file a cross bill claiming to charge Hendersons moiety of the property as part of the partnership stock, can this court say that the chancellor has improperly treated this property as mercantile stock? Can it set aside this decree, pronounced twenty-four years ago, under which a judicial sale has been made, upon the faith of which successive purchases and conveyances have taken place—by persons too having no notice of any equity on the part of the plaintiffs, but on the contrary having notice, I presume, of the fact stated by the heirs themselves, that the property in question was partnership property, and therefore properly sold ? I think not. The'privilege given to infants to answer anew and shew cause against a decree, is given to enable them to set aside that which is done to their pre *429 judice, and. not to overthrow what has been justly done, because of some technical objection to the proceedings, The decree against an infant, though it gives him a day to answer, is of the nature of a final decree, and is carried into execution as such, nor is it reversible but for error, or fraud and collusion. 1 Grant’s Ch. Pr. 226. The form of the decree giving time is thus : “ And this decree is to be binding on the infant, unless &c. he shew to the court good cause to the contrary”—that is, that it ought not to be binding. Powell on Mortg. 980. Tennent’s heirs v. Pattons, 6 Leigh 208. per Carr, J. citing Bingham on Infancy, 131,2. And hence it is, that even in the case of a mortgage, he is not permitted to go into the accounts, nor to redeem by paying what is reported due, but can only shew error in the decree, or ' that it was unjust. Powell on Mortg. 983. 3 P. Wms. 352. And it seems now to be the common course to pray a sale in the case of an infant, that he may be bound. 1 Vern. 295. Powell on Mortg. 983. And even if he be foreclosed, he is bound. “ For an infant may be foreclosed. You can have your decree against him. He can do nothing but shew error. He is foreclosed to all intents. You may go to market with it, and the purchaser is only liable to be overhauled in the account.” Bishop of Winchester v. Beavor, 3 Ves. 317. And if no day is given the infant, and he files his bill to set aside the decree for fraud and collusion, if no fraud appears, it will not be set aside unless it be shewn to be unjust. Richmond v. Tayleur, 1 P. Wms. 736. And so in Williamson v. Gordon, 19 Ves. 115. lord Eldon, admitting the right of the infant to shew cause, said, “ but he cannot do that, if the decree would have been right against him had he been adult. He can shew nothing but error in the decree; and a decree of foreclosure is not error, according to my notion.” In this case, had the heirs been adults and answered, they *430 must have answered shewing the facts now stated by them ; and if so, the sale must have been decreed. And even now, if, upon the case as it now stands, a sale ' ought to have been decreed, cui bono set aside the former decree, and then decree the same thing over again ? There can be no difference, except the unjust effect of setting aside a fair judicial sale (made under the faith of the decree) against purchasers as to whom no unfairness can be alleged.
I am aware it is contended that as Henderson was largely debtor to the firm, no sale ought to have been made. But the fact does not appear, and if it had appeared at the date of the decree, it could not have arrested the sale, but would only have arrested the funds; for (as has been already shewn) upon the death of one partner, the partnership stock of every description must be sold, in order to a division between the partners.
Upon the whole, I am of opinion that the decree of 1815 must stand, and the sale under it be held unimpeachable. And as to the purchase money, whether paid or not, the purchasers Pierce and Preston were in no wise responsible for it. No lien was retained on the land. . The bond given by the purchasers was taken up, and a receipt filed by the guardian and executor. If this transaction was fraudulent, it is not proved to have been so, and still less is it proved that Pierce knew of the fraud: and having the legal title, and having received it before notice of the claim of the representatives of Trigg, they must be protected, even if it be conceded that the heirs, and not the executor, were entitled to the money.
The original decree must stand, and the cross bill be dismissed as to Pierce’s representative and Preston; the land in their hands not being responsible to Trigg’s representatives for any amount due. them from Henderson.
*431 As, however, the sale in this case was made subject to the claims of dower of Rachael Henderson and Sarah Hamilton, one of which has never been asserted and the other of which was never valid, and as the price of the lots may have been affected by the supposed existence of those incumbrances, it has been suggested by my brother Cabell, that in so far the infants have been injured and are entitled to relief. To this suggestion I have yielded, though I do not think the chancellor who entered the decree of 1815 could have done otherwise. On the one hand, not having the claimants before him, he could not pronounce definitively on their claims; and on the other, as the sale was required for winding up the partnership concern, and was equally demanded by the state of the property, and pressed by the surviving partner, who was also the executor of the deceased partner, and by the guardian of the heirs or distributees, he could not properly have delayed the sale until the claimants were made parties (if indeed that was practicable) and their rights definitively settled. Yet as the price may have been affected to the detriment of the appellees, and as, without disturbing the sale, redress may be afforded, I do not think it ought to be denied. To disturb the sale would be to establish a precedent pregnant with mischief and in conflict with all authority. The cases already cited shew that in foreclosures, or in sales under mortgage decrees, the infant cannot redeem, or set aside the sales. Relief, when afforded, is given without interfering with the foreclosure or the sale. The necessity of attributing the highest sanctity to judicial sales, where the authority to sell is without question, is sustained by the gravest considerations. Who would buy, but at a ruinous sacrifice, if, after the lapse of 21 years, upon the determination of the infancy of a newborn child, bis purchase might be set aside ? Who, if he made such a purchase, could venture to improve ? And with these difficulties, *432 what prospect would there be that the property of the infant would ever be sold for an adequate price ? It is then for the benefit of infants that the rule is established. It is to prevent the ruinous sacrifice of their property, that purchasers under judicial sales of their estates are to be protected in their purchases, and that all proper redress should be afforded the infants without invalidating their title.
' In this case, then, I am of opinion that the decree of September 1835 should be reversed, and the cause sent back, with directions to institute such proceeding as may seem most expedient for ascertaining what was the true value of the houses and lots in the proceedings mentioned, on the 20th of July 1815, (the day of the former sale,) if s.old upon a credit of twelve months, free of all incumbrances; to enter a decree in favour of the appellees for one half of any excess above the price at which the property was formerly sold, with interest from the 20th of July 1816 till paid ; and to make the same, (viz. the moiety of the said excess, if any, with the interest as aforesaid) a charge upon the premises in the hands of the appellant Preston, who, upon the payment thereof, should have a decree over against the estate of David Pierce deceased.