## Thomas D. Dyer vs. Moses Clark, Administrator, & others.

When real estate is purchased by partners, with the partnership funds, for partnership use and convenience, although it is conveyed to them in such a manner as to make them tenants in common, yet in the absence of an express agreement, or of circumstances, showing an intent that such estate shall be held for their separate use, it will be considered and treated, in equity, as vesting in them, in their partnership capacity, clothed with an implied trust that they shall hold it, until the purposes, for which it was so purchased, shall be accomplished, and that it shall be applied, if necessary, to the payment of the partnership debts. Upon the dissolution of the partnership, by the death of one of the partners, the survivor has an equitable lien on such real estate for his indemnity against the debts of the firm, and for securing the balance that may be due to him from the deceased partner, on settlement of the partnership accounts between them ; and the widow and heirs of such deceased partner have no beneficial interest in such real estate, nor in the rent received therefrom after his death, until the surviving partner is so indemnified.

BILL IN EQUITY. The plaintiff is surviving partner of the firm of Burleigh & Dyer, and the defendants are the administrator, the widow, and the minor children of the deceased partner, Stevens · Burleigh. The case was heard on the bill, the answer, and a master's report, which set forth facts, of which the following is an abstract :

On the 1st of April 1835, the plaintiff and Stevens Burleigh entered into sealed articles of partnership in the business of distillers, under the name and firm of Burleigh & Dyer, and afterwards entered upon said business with equal interests, and continued the same until April 1839, when said partnership was dissolved by the decease of said Burleigh. On the 17th of October 1837, the said partners bought a distil-house, and the land under and about the same, and all the valuable fixtures thereon, suitable and necessary for carrying on said business, for the sum of $ 19,000, and afterwards paid therefor $ 3000 in cash, from the partnership funds, and the said estate was thereupon conveyed to them jointly, by a deed describing them as "distillers, transacting business under the firm of Burleigh & Dyer." Said real estate was purchased solely for said partnership purposes, use and convenience, as a part of their stock in trade, and on partnership account ; and said partners occupied said

estate, to the time of said Burleigh's decease, as their partnership place of business, and from time to time altered and repaired the same, and paid all the expenses thereof from the partnership funds, and always held and regarded said estate as a part of the partnership effects and property, and in no way as the separate property of said partners.  At the time of the decease of said Burleigh, in 1839, the said partners were seized and possessed of said estate, subject to certain mortgages upon the same, made by them, to secure payment of certain notes given by them for $ 16,000, part of the purchase money thereof ; in which mortgages the wife of said Burleigh relinquished her claim to dower.

No part of the funds, that were applied to the purchase, alteration and repairs of said estate, was ever charged to said partners' respective accounts, on their books, as withdrawn by them from the funds or profits of the firm ; and neither partner ever intended to withdraw any part thereof from the partnership funds.

The defendant, Clark, is administrator of the estate of said Burleigh, which is insolvent, and he has sold, under a license of the probate court, one undivided moiety of said real estate, (subject to the mortgages aforesaid,) as the individual property of his intestate, for the sum of $1500, and executed a deed thereof to the purchaser.  The widow of said Burleigh, at the same time, released to said purchaser her right of dower in said moiety, for the sum of five dollars.  The plaintiff has sold the other moiety of said estate for the like sum, to the same purchaser, having first given notice to all the defendants, that such sale was not to be construed as a waiver of his claim to the whole estate, or the proceeds thereof, as partnership property.

On a settlement of the partnership accounts, the deceased partner, Burleigh, is found to have been indebted to the surviving partner, the plaintiff, in the sum of $ 732, after all the partnership matters are closed ; and the partnership is also insolvent, unless the proceeds, or part thereof, of the said real estate, and of the rents thereof which have accrued since said Burleigh's decease, (and which are in the plaintiff's hands, to the amount of $ 800,) shall be applied to liquidate the partnership accounts, and adjust the balance due to the plaintiff, as surviving partner, from said deceased partner's estate.

The prayer of the bill was, that the plaintiff might be allowed to retain the said rents, to be applied to the adjustment of the partnership accounts, and that the defendant, Clark, might be restrained, by injunction, from paying the proceeds of said estate to the individual creditors of said Burleigh, and be directed to pay over said proceeds to the plaintiff, as surviving partner. There was also a prayer for general relief.

*Pope*, for the plaintiff. The question in this case is, whether the plaintiff shall receive, in full, the debt due to him from his deceased partner, or shall be turned over to prove his debt under the commission of insolvency on the deceased's estate, and take a dividend thereon with the other creditors of the deceased.

At first view, the claim of the plaintiff may seem to have been decided against him in the case of *Goodwin* v. *Richardson*, 11 Mass. 469. But that case was decided in 1814, before equity powers were given to the court upon the subject of partnership matters ; and it went only to the length of declaring in whom the legal title of the estate vested, and whether, under the statutes then existing, it was a joint tenancy or tenancy in common. It was not like the case at bar, inasmuch as the real estate was obtained by foreclosing a mortgage made to secure a partnership debt, and was not land purchased for partnership use and convenience. And it appears that the court understood that in equity, and under general equity powers, a different view might, for some purposes, be maintained. That case was decided upon the old *St.* 1785, *c.* 62, § 4, that required conveyances of land to two or more to be construed and adjudged to be estates in common, unless otherwise expressed.

The *St.* of 1823, *c.* 140, § 2, first gave general equity powers to this court in matters of partnership, where there was not an adequate remedy at law. The Rev. Sts. *c.* 81, § 8, also confer the same powers ; and the case at bar is clearly within the terms of those statutes.

The general extension of business, and distribution of property, and the extended freedom of transferring real estate, in this country, contribute to increase the number of cases in which

real estate is held for the joint purposes of partnerships, and upon which the decision of this case may operate. And there are already, in our own reports, cases in which the real estate of firms is incidentally treated as a part of the partnership stock. *Taft* v. *Buffum*, 14 Pick. 322. *Goddard* v. *Pratt*, 16 Pick. 412.

The case of *Pierce* v. *Jackson*, 6 Mass. 242, which was re cently confirmed in *Allen* v. *Wells*, 22 Pick. 450, establishes the principle, that partnership funds are to be first applied to partnership debts. And it is well established, both in England and in this country, that a partner's interest in funds is his share of the surplus, after the debts of the firm are paid and a final balance ascertained, and that each partner has a lien on the funds for his share of the surplus, as well as for his indemnity against the joint debts. Gow on Part. *c.* 5, § 3. Collyer on Part. 65. *Harvey* v. *Crickett*, 5 M. & S. 336. *Hoxie* v. *Carr*, 1 Sumner, 173. 2 Story on Eq. § 1243. 22 Pick. *ubi sup.*

The plaintiff has settled the partnership debts, and liquidated the affairs of the firm. The deceased partner's estate is indebted to him in the sum of $732, on partnership account, and he relies on the doctrine of the courts of equity, to secure him against loss by the insolvency of the firm. His ground is, that in equity the real estate, (or the proceeds thereof, if sold,) purchased during the existence of the partnership, for partnership use, with partnership funds, is to be treated as partnership funds, and as personalty, to all intents and purposes, in the liquidation and adjustment of the partnership accounts and balances. This doctrine of the courts of equity is found throughout the elementary treatises relating to the subject, and has been declared and established in numerous reported cases in Great Britain and in the United States. Cross on Lien, 138. Collyer on Part. Book II. *c.* 1, § 1. 3 Kent Com. (4th ed.) 36 – 39, *& notes.* 2 Story on Eq. §§ 1243, 1244. Story on Part. §§ 91 – 93, 98.

The English cases to the point are *Thornton* v. *Dixon*, 3 Bro. C. C. 199. *Ripley* v. *Waterworth*, 7 Ves. 425. *Fereday* v. *Wightwick*, 1 Russ. & Mylne, 45. *Phillips* v. *Phillips*, 1 Mylne & Keen, 649. *Broom* v. *Broom*, 3 Mylne & Keen, 443. *Ran*

*dall* v. *Randall*, 7 Simons, 271. *Morris* v. *Kearsley*, and *Bligh* v. *Brent*, 2 Younge & Collyer, 139, 268. The doctrine of the English courts is reviewed thoroughly, from time to time, in the above cases, and other cases are therein cited to the same general effect. The cases are reviewed in the London "Law Magazine" for Feb. 1840, Vol. 23, pp. 98 – 107, and the conclusion drawn by the writer is, that " if land be purchased out of partnership moneys, for the use and convenience of the partnership, and in order that the same may be used for some purpose of their joint trade, it is only real estate as long as the partnership requires it as such, and on a dissolution, the shares of the respective partners therein are personal estate."

The English courts of equity have proceeded in this way to protect the interest of creditors of the firm ; and though the creditors have no lien on the partnership property, the courts work out a lien for them, through the surviving partner's lien. 2 Story on Eq. § 1253. As they hold that the real estate of the firm, purchased for partnership use and account, and out of partnership funds, is subject to the same rules as other partnership property, they give the broadest extension to the rule which first applies partnership property to partnership debts.

The same doctrine has been discussed and applied in the courts of the United States. In *Hoxie* v. *Carr*, 1 Sumner, 173, a case hardly distinguishable from the one at bar, Mr. Justice Story gave the weight of his authority to the doctrine of the English courts. The same principles came into discussion in Connecticut, in 1828, and were adopted and applied. *Sigourney* v. *Munn*, 7 Connect. 11. And the general rules of law, applicable to the personal property of a firm, have been applied, in equity, to partnership real estate, in the various courts of the Union. *Savage* v. *Carter*, 9 Dana, 410. *Greene* v. *Greene*, 1 Ham. 542. *Marvin* v. *Trumbull*, Wright, 386. *Richardson* v. *Packwood*, 13 Martin, 290. *Donaldson* v. *Cape Fear Bank*, 1 Dev. Eq. Rep. 103. *Forde* v. *Herron*, 4 Munf. 316. *Richardson* v. *Wyatt*, 2 Desaus. 471. *Philips* v. *Crammond*, 2 Wash C. C. 441. *Wooldridge* v. *Wilkins*, 3 V. E. Howard, 360.

The plaintiff is not concerned to contest the right of his

deceased partner's widow to dower in the real estate. Some of the cases above cited are decisive against such right. But if the estate be treated as personalty, so far as the plaintiff's claim on the estate of the deceased is in question, it is immaterial to him whether the widow has, or has not, a right to dower in the equity of redemption ; for he will receive enough to cover that claim, though dower should be set off to her.

*G. T. Curtis*, for the defendants. This case presents two questions on the part of the defendants. 1. Whether lands purchased for partnership use, out of partnership funds, are in this Commonwealth to be treated, on the death of one of the partners, as partnership property, of the nature of personal estate ; or whether they are to retain, throughout, the character of real property, and the share of each partner go to his representatives. 2. Whether, in either event, the widow of such deceased partner is entitled to dower in such lands.

1. The first question, as it arises in the present case, depends wholly on the general principles of law. There is nothing in the articles of partnership, or elsewhere, to affect this real estate with any agreement. The administrator of the deceased partner has sold the estate for the benefit of his creditors, under an order of the probate court, and holds the proceeds, as their representative. The widow and heirs of the deceased also assert their claims on the fund.

In England, this question, as between the representatives of a deceased partner and the partnership itself, seems to have been first raised before Lord Thurlow, in *Thornton* v. *Dixon*, 3 Bro. C. C. 199. The doctrine there held was, that though a partnership agreement may vary the nature of real property, yet, in order to do so, the agreement must be express : That if the agreement be, that on dissolution the lands shall be valued and sold, it would convert them into personalty of the partnership ; but that, if the agreement be not explicit enough for this purpose, " the property would result according to its respective nature, — the real as real, the personal as personal estate." This doctrine is the starting-point of the present question. It was equitable, and had many reasons in its favor ; one of which is, that it does

not withdraw real property from the operation of the laws of distribution and other incidents that follow it at common law. But this doctrine, after having been followed by some equity judges, has since been shaken in England. It was followed by Sir William Grant, in *Bell* v. *Phyn*, 7 Ves. 453, where real estate, purchased with a partnership fund, was held to have descended to the heir, against the claim of a residuary legatee, and to be subject to dower : Also in *Balmain* v. *Shore,* 9 Ves. 500, where a purchase, by partners, of real estate, to them and their respective heirs, as tenants in common, with covenants against alienation and partition, was held not to alter the nature of the property. In *Cookson* v. *Cookson*, 8 Simons, 529. the same general doctrine was followed.

But the courts of equity in England have changed this doctrine, in some degree. The case of *Ripley* v. *Waterworth*, 7 Ves. 425, is said by Collyer, in his work on partnership, p. 72, to have paved the way for the modern doctrine. But in that case, it is observable, it was held that an estate of freehold, holden for the purposes of the partnership, shall descend, in equity, as personal, if it appear *by express agreement* to have been the intention of the parties that it should be converted into personalty. So in *Crawshay* v. *Maule*, 1 Swanst. 521, Lord Eldon said, " for ordinary purposes, a lease is no more than stock in trade, and as a part of the stock may be sold ; nor would it be material that the estate purchased by a partnership was freehold, *if intended only as an article of stock ; though a question might in that case arise, on the death of a partner, whether it would pass as real estate,* or as stock, personal estate in enjoyment, though freehold in nature and quality." And he refers to the older cases, above cited, and to some others.

The doctrine that the real estate of a partnership is to be considered as part of the capital, and has the quality of personal estate, is countenanced by the cases of *Fereday* v. *Wightwick*, 1 Russ. & Mylne, 45 ; *Phillips* v. *Phillips*, 1 Mylne & Keen, 649 ; and *Townsend* v. *Devaynes*, reported in p. 97 of the notes to 1 Montagu on Partnership. But the English authorities lay stress upon the fact, that the partners have, *by their agreement,*

purposely impressed upon the real estate the character of personalty. That it is to descend as personalty, in the absence of any such agreement, is not clear in England ; and Mr. Justice Story remarks, that the doctrine is open to many distressing doubts. Story on Part. § 93.

In this country, there have been contradictory decisions ; but the weight of authority is believed to be against the claim of the plaintiff. In the case of *Sigourney* v. *Munn*, 7 Connect. 11, cited on the other side, the land was affected by a special agreement that it should be held as partnership stock. The case of *Hoxie* v. *Carr*, 1 Sumner, 173, stands opposed to other cases. *Yeatman* v. *Woods*, 6 Yerg. 20, treats real estate, so situated, as real, and descending to the heir of the deceased partner. In *Coles* v. *Coles*, 15 Johns. 159, it was held that where one partner sells real estate of the partnership, the other may maintain assumpsit against him for his share of the proceeds. See also *Blake* v. *Nutter*, 1 Appleton, 16. The case of *Smith* v. *Jackson*, 2 Edw. Ch. 28, is directly in point against the plaintiff's claim.

The case of *Goodwin* v. *Richardson*, 11 Mass. 469, is almost precisely the same as the one at bar. Mr. Justice Story, in *Hoxie* v. *Carr*, said this case was a mere decision at law, upon a legal title. This is true of part of the case ; it being necessary to ascertain what and in whom the legal title was. But on examination of the facts and the opinion of the court, it will be found that much of the reasoning proceeds upon equitable considerations. In that case, as in the present case, the real estate was purchased with partnership funds : The deceased partner's administrator sold his undivided half of the estate : The partnership was insolvent ; and the survivor, for the benefit of the joint creditors, brought assumpsit against the administrator for the fund in his hands. The court proceeded first to ascertain the legal title, and found that the partners were tenants in common ; the court then inquired whether it should make any difference that the estate was paid for out of partnership funds. "However this may be," the court say, "whilst both parties were living, and although a court of chancery might, in that case, apply real estate, so purchased, to the discharge of the

48 *

joint debts ; yet in the present case, the death of one partner removes the only equitable motive or reason for such a dispo sition of this property." The court then proceed to show tha. the joint creditors have the same remedy against the share of the deceased partner in the hands of his administrator, as if such partner alone had been their debtor ; and remark, that it would be most unjust towards his *separate* creditors, if an estate, which was legally his property, should, under such circumstances, be taken out of the only fund to which they could resort, and be applied to increase the dividend of the joint creditors.

In the case at bar, the partners were tenants in common of the real estate. Rev. Sts. *c.* 59, §§ 10, 11. The legal title of one undivided half was in the deceased partner. What " equitable motive or reason " is there for withdrawing this estate from the fund to which his separate creditors may resort, and applying it to the plaintiff's claim, which did not exist in *Goodwin* v. *Richardson ?* The joint creditors may resort to it *pari passu* with the separate creditors ; and if the plaintiff has paid those joint creditors, and has a balance against his partner's estate, he may resort to it also *pari passu* with the other creditors of the deceased.

It is said that the principle, by which joint property is to be first applied to joint debts, requires that this fund should be paid over to the plaintiff. This is true, as applied to property clearly ascertained to be joint property ; but it is submitted that this is not the case with land which stands unaffected by any agreement how it shall be held or how it shall be treated on a dissolution of the partnership. In the case of *Goodwin* v. *Richardson,* this same consideration was pressed upon the court, viz. that the fund in the hands of the administrator ought to be applied to the joint debts, — the plaintiff suing for the benefit of the joint creditors. Yet the court did not think the property there subject to the operation of this principle. And it is difficult to distinguish the property in the present case from that ; both being held under a tenancy in common, and purchased with partnership funds. The only distinction is, that in the one case the lands were purchased for the firm to conduct its business upon, and in the

other, the lands were taken for a partnership debt ; both equally for partnership purposes.

2. The next question is, whether Mrs. Burleigh is entitled to dower in this land ; and if so, whether it is not a charge upon the fund in the hands of the defendant, Clark, the administrator. By Rev. Sts. *c.* 60, § 1, the wife is entitled to dower at common law, in *the lands* of her husband ; and at common law the wife is said to be dowable of all estates of inheritance, of which her husband was seized during the coverture, of which any issue which she might have had, might by possibility have been heir 2 Bl. Com. 131. The case of *Goodwin* v. *Richardson* is authority to show that land, bought with partnership funds and con· veyed to the partnership, is an estate of inheritance ; and the partners being tenants in common, each has a legal title, as well as beneficial ownership ; and the wife of each must be dowable of a moiety. The following cases are in point, and in favor of dower in partnership lands. *Bell* v. *Phyn*, 7 Ves. 453. *Smith* v. *Smith*, 5 Ves. 189. *Smith* v. *Jackson*, 2 Edw. Ch. 28.

In the present case, the sum paid by the purchaser was the full value of an undivided half of the land, and he bought with the understanding that the sum paid by him covered the right of dower. The widow released without being aware that she had any further claim on the land, and the sum of five dollars was presented to her for executing the deed. Under these circumstances, it seems clear that the dower is to be charged on the purchase money, which was understood and intended by the parties as the full value of one half of the estate, and was so in fact. It is submitted, that even if the plaintiff is entitled to any portion of this money, it is only after the widow's claim has been paid.

If the court should hold that the real estate is to be treated as partnership property, still there is no inconsistency in considering it as subject to the widow's dower. The only effect of treating it as partnership property is to give the partnership creditors, including the surviving partner, a preference over the separate creditors. As land is always assets for the payment of debts, in default of personal property, and the debts of the firm are

also debts of the deceased partner, the application of the land to the partnership debts is only a marshalling of the assets in favor of one class of creditors, who have a more equitable right to this particular fund. But it would be going very much further, to divest the widow of a legal estate of freehold, or at least of a right to such an estate, which she acquired by her husband's seizin of the estate. It is not perceived how a court of chancery could do this, unless upon the ground that the land was held by the husband merely as trustee for the partnership; and there would be great difficulties in such a construction.

*Pope*, in reply. The early cases doubtless laid great stress upon a direct agreement between partners respecting their real estate. But the cases cited for the defendants do not maintain the position that such agreement is the basis of the equity inter-position of the English courts in recent times. *Cookson v. Cookson*, 8 Simons, 529, the only case of late date, which has been cited, does not support this doctrine. The lands, in that case, were not purchased with partnership capital, but were the property of a partner who afterwards took his son into partner-ship with him; and the main point decided seems to have been, what all will concede, viz. that the affairs of the firm being liqui-dated, the property descended to the heirs of the father, as realty. On the other hand, the cases cited for the plaintiff, in the opening, and especially *Phillips v. Phillips*, 1 Mylne & Keen, 649, show that the English decisions do not stand upon any express agreement of the partners.

The *intention* of the parties to make real estate, purchased with partnership capital, partnership stock, is the real foundation of the decisions; and where the parties have expressly cove-nanted to make their realty partnership stock, such intention is doubtless the most clearly proved. But in the absence of such express agreement, the courts, desiring to secure the prior right of partnership creditors to payment out of the partnership capital, have presumed it to be the intent of the partners to make their real estate, so purchased, held and used for purposes of joint trade, a part of their partnership effects.

In many kinds of partnership business, it is difficult to see

how the rights of partners, or of their partnership creditors, can be maintained, without the exercise of such equity powers, if the purchase of real estate, which is indispensably necessary for a successful prosecution of their joint business, is to be construed as a division *pro tanto* of the funds applied to such purchase. As the law gives the creditors of the firm a priority of claim to the partnership effects, it would seem to be the more rational and equitable rule, to presume, in the absence of evidence to the contrary, that partners intend that such real estate should be partnership stock, and to leave parties, who intend to make such estate individual property, to establish that intent. In *Hoxie* v. *Carr*, 1 Sumner, 181, Story, J. says, "the circumstance, that the payment has been made out of the partnership funds, especially if the property be necessary for the ordinary operations of the partnership business, and be actually so employed, will afford a very cogent presumption that it was intended to be held as partnership property ; and in the absence of all countervailing circumstances, it will be absolutely decisive."

Whatever may have been the special facts, in the case of *Sigourney* v. *Munn*, 7 Connect. 11, Hosmer, C. J. gave his unqualified assent to the doctrine laid down in *Phillips* v. *Phillips* and *Hoxie* v. *Carr*, that land, purchased with partnership funds for partnership use, is to be treated as partnership stock.

The case cited from the Tennessee reports, *Yeatman* v. *Woods*, 6 Yerg. 20, was decided in opposition to the principles for which the plaintiff contends. That decision, however, was made with manifest reluctance, and solely upon the authority of the earlier case of *M'Alister* v. *Montgomery*, 3 Hayw. 94. And in 1841, the supreme court of Tennessee expressly recognized a contrary doctrine, in the case of *Hunt* v. *Benson*, 2 Humph. 459.

*Coles* v. *Coles* and *Blake* v. *Nutter* were actions at law ; and it is difficult to see how they could have been decided differently in a court of law. In *Smith* v. *Jackson*, 2 Edw. Ch. 28, the land was not purchased for partnership use and convenience, but was taken to secure payment of a partnership

debt. But even that case distinctly negatives the doctrine that an express agreement between partners is necessary to convert their real estate into personal and partnership effects. "The equitable interest in such property," says the vice-chancellor, "arising from an express agreement *or the clear and manifest intent of the parties*, is to be deemed part of the partnership stock, subject to the partnership debts, and liable to be applied accordingly." The doctrine laid down in that case, restrained as it evidently was by the case of *Coles* v. *Coles*, differs from *Hoxie* v. *Carr*, only in not stating what is to be the evidence of such intention, and in not declaring whether the purchase of lands with partnership capital, for partnership use, should be deemed, in the absence of contradictory circumstances, a conclusive presumption of such intention.

It is asked, what more equitable reason is there for separating the fund now in question from the individual property of the deceased partner, than existed for doing so in the case of *Goodwin* v. *Richardson* ? There is one material difference in the cases. In that case, the land was not purchased for partnership use, but was taken by foreclosure of a mortgage made to secure a partnership debt ; while in the case at bar, the land was purchased solely for partnership use. And such purchase for such use is one of the material and necessary elements of the cases in which the land is held, in courts of equity, to be partnership stock.

SHAW, C. J. This is a suit in equity by the surviving partner of the firm of Burleigh & Dyer, established by articles of copartnership, under seal, for the purpose of carrying on the business of distillers. The principal question is one which has arisen in several other cases, and is this ; whether real estate, purchased by copartners, from partnership funds, to be held, used and occupied for partnership purposes, is to be deemed in all respects real estate, in this Commonwealth, to vest in the partners severally as tenants in common, so that on the decease of either, his share will descend to his heirs, be chargeable with his wife's dower, and in all respects held and treated as real estate, held by the deceased partner as a tenant in com-

mon ; or, whether it shall be regarded as *quasi* personal property, so as to be held and appropriated as personal property, first to the liquidation and discharge of the partnership debts, and to the adjustment of the partnership account, and payment of the amount due, if any, to the surviving partner, before it shall go to the widow and heirs of the deceased partner. This is a new question here, and comes now to be decided, for the first time.

There are some principles, bearing upon the result, which seem to be well settled, and may tend to establish the grounds of equity and law, upon which the decision must be made. It is considered as established law, that partnership property must first be applied to the payment of partnership debts, and therefore that an attachment of partnership property for a partnership debt, though subsequent in time, will take precedence of a prior attachment of the same property for the debt of one of the partners. It is also considered, that however extensive the partnership may be, though the partners may hold a large amount and great variety of property, and owe many debts, the real and actual interest of each partner in the partnership stock is the net balance which will be coming to him after payment of all the partnership debts and a just settlement of the account between himself and his partner or partners. 1 Ves. sen. 242.

The time of the dissolution of a partnership fixes the time at which the account is to be taken, in order to ascertain the relative rights of the partners, and their respective shares in the joint fund. The debts may be numerous, and the funds widely dispersed and difficult of collection ; and therefore much time may elapse, before the affairs can be wound up, the debts paid, and the surplus put in a condition to be divided. But whatever time may elapse before the final settlement can be practically made, that settlement, when made, must relate back to the time when the partnership was dissolved, to determine the relative interests of the partners in the fund.

When, therefore, one of the partners dies, which is *de facto* a dissolution of the partnership, it seems to be the dictate of natural equity, that the separate creditors of the deceased part

ner, the widow, heirs, legatees, and all others claiming a deriva-
tive title to the property of the deceased, and standing on his
rights, should take exactly the same measure of justice, as such
partner himself would have taken, had the partnership been
dissolved in his life-time ; and such interest would be the net
balance of the account, as above stated.

Such indeed is the result of the application of the well known
rules of law, when the partnership stock and property consist
of personal estate only.    And as partnerships were formed
mainly for the promotion of mercantile transactions, the stock
commonly consisted of cash, merchandize, securities, and other
personal property ; and therefore the rules of law, governing
that relation, would naturally be framed with more especial ref-
erence to that species of property.    It is therefore held, that
on the decease of one of the partners, as the surviving partner
stands chargeable with the whole of the partnership debts, the
interest of the partners in the chattels and choses in action shall
be deemed so far a joint tenancy, as to enable the surviving
partner to take the property by survivorship, for all purposes
of holding and administering the estate, until the effects are re
duced to money, and the debts are paid ; though, for the pur-
pose of encouraging trade, it is held that the harsh doctrine of
the *jus accrescendi*, which is an incident of joint tenancy, at the
common law, as well in real as in personal estate, shall not ap-
ply to such partnership property ; but, on the contrary, when
the debts are all paid, the effects of the partnership reduced to
money, and the purposes of the partnership accomplished, the
surviving partner shall be held to account with the representa-
tives of the deceased for his just share of the partnership funds.

Then the question is, whether there is any thing so peculiar
in the nature and characteristics of real estate, as to prevent
these broad principles of equity from applying to it.    So long
as real estate is governed by the strict rules of the common law,
there would be, certainly, great difficulty in shaping the tenure
of the legal estate in such form as to accomplish these objects.
Should the partners take their conveyance in such mode as to
create a joint tenancy, as they still may, though contrary to the

policy of our law, still it would not accomplish the purposes of the parties ; first, because either joint tenant might, at his option, break the joint tenancy and defeat the right of survivorship, by an alienation of his estate, or (what would be still more objectionable) the right of survivorship at the common law would give the whole estate to the survivor, without liability to account, and thus wholly defeat the claims of the separate creditors, and of the widow and heirs of the deceased partner.

But we are of opinion, that the object may be accomplished in equity, so as to secure all parties in their just rights, by considering the legal estate as held in trust for the purposes of the partnership ; and since this court has been fully empowered to take cognizance of all implied as well as express trusts, and carry them into effect, there is no difficulty, but on the contrary great fitness, in adopting the rules of equity on the subject, which have been adopted for the like purpose, in England and in some of our sister States. And it appears to us, that considering the nature of a partnership, and the mutual confidence in each other, which that relation implies, it is not putting a forced construction upon their act and intent, to hold that when property is purchased in the name of the partners, out of partnership funds and for partnership use, though by force of the common law they take the legal estate as tenants in common, yet that each is under a conscientious obligation to hold that legal estate, until the purposes for which it was so purchased are accomplished, and to appropriate it to those purposes, by first applying it to the payment of the partnership debts, for which both his partner and he himself are liable, and until he has come to a just account with his partner. Each has an equitable interest in that portion of the legal estate held by the other, until the debts, obligatory on both, are paid, and his own share of the outlay for partnership stock is restored to him. This mutual equity of the parties is greatly stengthened by the consideration, that the partners may have contributed to the capital stock in unequal proportions, or indeed that one may have advanced the whole. Take the case of a capitalist, who is willing to put in money, but wishes to take no active concern in the conduct of

business, and a man who has skill, capacity, integrity and industry to make him a most useful active partner, but without property, and they form a partnership. Suppose real estate, necessary to the carrying on of the business of the partnership, should be purchased out of the capital stock, and on partnership account, and a deed taken to them as partners, without any special provisions. Credit is obtained for the firm, as well on the real estate as the other property of the firm. What are the true equitable rights of the partners, as resulting from their presumed intentions, in such real estate ? Is not the share of each to stand pledged to the other, and has not each an equitable lien on the estate, requiring that it shall be held and appropriated, first to pay the joint debts, then to repay the partner who advanced the capital, before it shall be applied to the separate use of either of the partners ? The creditors have an interest, indirectly, in the same appropriation ; not because they have any lien, legal or equitable, (2 Story on Eq. § 1253,) upon the property itself ; but on the equitable principle, which determines that the real estate, so held, shall be deemed to constitute part of the fund from which their debts are to be paid, before it can be legally or honestly diverted to the private use of the partners. Suppose this trust is not implied, what would be the condition of the parties, in the case supposed, in the various contingencies which might happen ? Suppose the elder and wealthy partner were to die : The legal estate descends to his heirs, clothed with no trust in favor of the surviving partner : The latter, without property of his own, and relying on the joint fund, which, if made liable, is sufficient for the purpose, is left to pay the whole of the debt, whilst a portion, and perhaps a large portion, of the fund bound for its payment, is withdrawn. Or suppose the younger partner were to die, and his share of the legal estate should go to his creditors, wife or children, and be withdrawn from the partnership fund ; it would work manifest injustice to him who had furnished the fund from which it was purchased. But treating it as a trust, the rights of all parties will be preserved ; the legal estate will go to those entitled to it, subject only to a trust and equitable lien to the surviving part

ner, by which so much of it shall stand charged as may be necessary to accomplish the purposes for which they purchased it. To this extent, and no further, will it be bound ; and subject to this, all those will take, who are entitled to the property ; namely, the creditors, widow, heirs, and all others standing on the rights of the deceased partner.

It may happen that real estate may be so purchased by partners, and out of partnership funds, in such manner as to preclude such implied trust, and indicate that the parties intended to purchase property to be held by them separately for their separate use ; as where there is such an express agreement at the time of the purchase, or a provision in the articles of copartnership, or where the price of such purchase should be charged to the partners respectively, in their several accounts with the firm. This would operate as a division and distribution of so much of the funds, and each would take his share divested of any implied trust. If, in the conveyance, the grantees should be described as tenants in common, it would be a circumstance bearing on the question of intent, though perhaps it might be considered a slight one ; because those words would merely make them tenants in common of the legal estate, which, by operation of law, they would be without them. But, as we have already seen, such legal estate is not at all incompatible with an implied trust for the partnership.

The result of this part of the case seems to us to be this ; that when, by the agreement and understanding of partners, their capital stock and partnership fund consist, in whole or in part, of real estate — inasmuch as it is a well known rule governing the relation of partnership, that neither partner can have an ultimate and beneficial interest in the capital until the debts are paid and the account settled ; that both rely upon such rule and tacitly claim the benefit of it, and expect to be bound by it ; the same rule shall extend to real estate. The same mutual confidence, which governs the relation in other respects, extends to this ; and, therefore, when real estate is purchased as part of the capital, whether by the form of the conveyance the legal estate vests in them as joint tenants or tenants in common, it vests in them

and their respective heirs, clothed with a trust for the partners, in their partnership capacity, so as to secure the beneficial interest to them until the purposes of the partnership are accomplished. It follows, as a necessary consequence, that such partnership real estate cannot be conveyed away and alienated by one of the partners alone, without a breach of such trust ; and that such a conveyance would not be valid against the other partner, unless made to one who had no notice, actual or constructive, of the trust. But, if a person knows that a particular real estate is the partnership property of two or more, and he attempts to acquire a title to any part of it from one alone, without the knowledge or consent of the other, there seems to be no hardship in holding that he takes such title at his peril, and on the responsibility of the person with whom he deals.

But we think the same conclusion is well supported by authorities, although there has been some diversity of opinion amongst the earlier cases.

The adjudged cases were so fully examined by the counsel in their arguments, that it is unnecessary to state them in detail. The principles, which have already been suggested as the grounds on which we decide the present case, were applied in *Phillips* v. *Phillips*, 1 Mylne & Keen, 649 ; *Broom* v. *Broom*, 3 Mylne & Keen, 443 ; *Sigourney* v. *Munn*, 7 Connect. 11 ; and *Hoxie* v. *Carr*, 1 Sumner, 173. In these cases, all the previous decisions on the subject were carefully considered. See also 3 Kent Com. (4th ed.) 36 – 39. 1 Story on Eq. §§ 674, 675. 2 ib. § 1207. Collyer on Part. 76. Cary on Part. 27, 28. *Houghton* v. *Houghton*, 11 Simons, 491.

It has been supposed that the case of *Goodwin v. Richardson*, 11 Mass. 469, stands opposed to the decision now made. I do not think it does. That case was decided in 1814, before equity powers existed in this Commonwealth, on the general subject of trusts. It was in terms a question as to the vesting of the real estate ; and the court were bound to decide the case for the defendant, if they found, upon the facts, that the estate in question had vested in the partners, on foreclosure, as tenants in common. Had they decided the other way, they must have decided that

partners, taking real estate in satisfaction of a partnership debt, by foreclosing a mortgage, would hold the estate as joint tenants, with right of survivorship at law, without liability to account — a principle directly opposed to the *St.* of 1785, *c.* 62, respecting joint tenancy ; because in that case and at that time the real estate must descend and vest according to the rules of law, and there was no court of equity competent to require the surviving partner to account with the representatives of the deceased party.

In that case, as it happened, both the separate estate and the partnership estate were insolvent, and therefore good justice would have been done, in deciding that the plaintiff should recover for the benefit of the partnership creditors.    But the court were deciding upon a rule of law, which must apply to all cases, and they could not have decided that for the plaintiff without holding that all such estate, held by partners, should be deemed joint estate, with a right of survivorship at law, and without liability to account ; a rule opposed to the plainest principles of equity, and to the spirit, if not to the letter, of the statute respecting joint tenancy.    The court were dealing solely with a question of law, in determining a legal estate, and intimate that a court of equity might make joint real estate applicable, as personal, to the payment of partnership debts.    We consider, therefore, that that decision is not opposed to the decision, upon equitable principles, to which we now propose to come.

On the facts of the present case, we are of opinion that the real estate in question was a part of the capital stock purchased out of the partnership funds, for the partnership use, and for the account of the firm.    The partners entered into articles, as distillers.    The business required a large building and fixtures, which they purchased and paid for in part out of the joint funds, and gave notes in the partnership name for the remainder of the price, and the estate was regarded by them as partnership effects. The repairs and improvements were also charged to joint account.    These are all decisive indications of joint property.

The plaintiff has received a sum in rents and profits that have accrued since his partner's death.    The defendant, Clark, as administrator of Burleigh, the deceased partner, has sold an undi-

49 *

vided half of the property as his, under a license, and with the assent of the plaintiff. The widow joined to release her dower, for a nominal sum. But we cannot perceive that the right of the widow is distinguishable from that of the creditors and heirs of the deceased partner. As far as this estate was held in trust by her deceased husband, she was not entitled to dower. For all beyond that, she will be entitled, because he held it as legal estate, unless she is barred by her release ; of which we give no opinion.

The plaintiff is entitled to a decree charging the amount of rents and profits in his hands, and so much of the proceeds of the sale made by the administrator, as will be sufficient to discharge the balance of the partnership account ; and the rest of the proceeds will remain in the hands of Clark, the administrator of Burleigh, to be distributed according to law.