Shaw, C. J.
This is an action of ejectment, brought to recover an undivided part of the estate long known as the Green Dragon Tavern estate. Mrs. King claims as one of the heirs of her grandfather, William Burbeck, who died in August, 1785, through her father, John Burbeck, who died in 1819. At the time of the decease of her father, the demand-ant was a feme covert, being the wife of Gedney King, who died in August, 1839. The ground of the demandant’s claim of title is, that her grandfather, William Burbeck, from whom both parties claim, was seised of the estate in fee, and, on the 26th December, 1777, executed a conveyance thereof to William Bell and four others, and the survivor of them, as joint tenants, but without words of limitation to their hens, or to the heirs of the survivor; that_ this vested an estate for life only in the grantees, and the last survivor; that this left a reversion in William Burbeck, which descended to his heirs, or passed to them by the residuary clause in his will. Paul Revere, the last survivor of the said grantees, died May 10, 1818. The claim is, that, at that time, a right of entry vested in John Burbeck, which, on his decease, a few months after-wards, descended to his heirs, one of whom was the demand-ant ; that she was then under the disability of coverture, and so continued until 1839, when her husband, Gedney King, died ; and within ten years from that time this action was brought.
The question depends upon a rule of strict law, and stands on grounds purely technical. It is this: that, by a rule of the common law, a deed to one or several persons, named, with *77 out limitation to heirs, or words of limitation, conveys a life-estate only; so that a reversion remains in the grantor, which may pass by descent or devise to his heirs or devisees.
How far the construction of this deed might be aided or affected by a bond previously given by the grantor, and in pursuance of which this deed was given, perhaps it is not necessary particularly to consider. The circumstances may be briefly stated. The purchase of the Green Dragon Tav ern, for the use of the masonic fraternity, seems to have originated with St. Andrew’s Lodge, by a vote in 1764. A purchase was made of the estate in question, by a deed in fee from Catherine Kerr to Thomas Milliken, Moses Deshon, and others, for the use of the lodge. In 1768, a vote passed by the lodge desired the holders of said bond to convey the same to R. W. (Right Worshipful) William Burbeck, on condition that he advance and pay all moneys due and owing from the lodge, &c., stated and fixed afterwards in the deed at ¿£400; and on further condition, that he should give a bond to William Bell and others named, with a condition, that if said Bell and others, the obligees, should repay him the ¿£400 within ten years, and all such sums of money, &c., he, the said William Burbeck, should reconvey the premises to William Bell, Paul Revere, and four others, for the use of the lodge.
The better and more effectually to secure the performance of this obligation to reconvey, for the use of the lodge, as there was then no court of equity, to enforce a specific performance, or carry into effect a trust, and as a lodge is not a corporation having capacity to sue in its own name, the vote further provided, that said Barrett and others, to whom the bond of Burbeck was to be given, should give their obligation in writing, to William Bell, Paul Revere, and others, stipulating that if, upon repayment, said Burbeck should refuse to recon-vey, according to his bond, to said Bell and others, then that they, obligees of Burbeck, would sue his bond, and pay all such sums of money as they should recover thereon, to the treasurer of said lodge for the time being, for the use of the ledge.
*78 On thé 22d, four days after this vote, said Burbeck did execute a bond to Barrett and others, in the penalty of ¿6800, with a condition reciting the conveyance of the premises to him in fee, by a deed of Moses Deshon and others, dated the 20th, and reciting his promise and stipulation, on receiving such conveyance, to execute a bond to reconvey to William Bell and others, to hold to them and their heirs, to the use of the lodge called St. Andrew’s Lodge, and to account for the rents and profits thereof; it then provides, that if said Burbeck, his heirs, &c., shall fulfil and perform said promise and agreement, his bond should be void, otherwise, in force. Within a few weeks after, votes were passed by the lodge, expressing their satisfaction with these transactions, their thanks to Moses Deshon and others, for their good services, and appointing Burbeck, Barrett and others to transact the whole of the affairs of the house, and giving directions and advice in regard to their management.
Thus the matter stood during nearly the term of ten years, contemplated by the bond, viz: until December, 1777, when the deed was executed, upon the construction of which this question depends. This deed is set forth at large in the agreed statement of facts. It recites the payment of ¿6400 lawful money, by William Bell and the others named in his bond, and in consideration thereof, conveys to them the estate (described) with the buildings and flats, passages, privileges, and appurtenances, to hold to them and the survivors and survivor of them, “ in trust to and for the use of the Freemasons’ Lodge in said Boston, known by the name of St. Andrew’s Lodge, to their only proper use, benefit, and behoof forever.” Did this deed pass a fee, or a life-estate only, to the grantees ?
It is , argued by the tenants, that Burbeck never had an absolute title to the estate; that, simultaneously with the deed of Deshon and others to him, he gave a bond to recon-vey and account, &c., on payment of a sum of money and interest. It is obvious that the conveyance to him had a twofold object, the first to secure to him the reimbursement of his advances for the lodge, and then to hold for them, because they had not caoacitv to take and hold real estate. *79 Had the transaction been in legal effect what it purports to be in words, a conveyance to him, with a simultaneous bond, both to reeonvey to the same persons on payment of a sum of money, it would have been a defeasance, a grant defeasible upon a condition subsequent; so that, upon a performance of the condition, all the estate granted to him, be it a life-estate or a fee, would be devested, and again vested in the grantors. But it was not a bond to re-convey, that is, to convey to the same persons, but to other persons, to the beneficial uses of the same body from whose trustees it came to him, to wit, the lodge. But though this conveyance to other persons than the grantors cannot in law operate as a defeasance, it must have been intended to have the same effect.
It certainly seems, that when both the purposes for which it was conveyed to him had been accomplished, when he had been reimbursed his whole advances, and held the estate for the unincorporated body, to supply their want of capacity to hold real estate, and when, pursuant to his obligation, he was conveying the estate to other trustees, to hold the estate for the same cestuis que trust, it was to be expected that he would transfer all the title he had taken. Indeed, it is strongly argued on the part of the tenants, that, as Burbeck was under obligation, legal as well as equitable, on receiving the fuL amount of his dues, to convey the whole estate to the use of the real beneficiaries, that it was his intention to do so. But it is answered, on the other hand, that, even if it were admitted that he intended to do so, if he has not executed such an instrument as will be sufficient in law to pass an estate in fee, his intention is unexecuted and cannot avail. This question we have not found it necessary to decide, and therefore we give no opinion upon it; there is another ground which we think decisive.
Assuming, then, as the rule of the common law, that a conveyance of an estate to one or more, without words of Limitation to heirs, by deed, creates a life estate only, though very much relaxed in its application to devises by will, this rule is to be taken in connection with other well established rules of law. It is a general rule, that a deed of conveyance, *80 like other instruments, is to be construed according to the intention of the makers, subject only to certain rules necessary to the uniformity and certainty of the law; which are, that such intention is to be a legal, not an arbitrary intention, — such an intention as may be inferred from the use of terms which have acquired a legal signification; and further, that the intention can be carried into effect without a violation of the rules of law. Subject to these restrictions, the intention to be derived from the whole deed, construing every part and clause with reference to every other part, will govern.
In thus ascertaining the intention, in order to the construction of a deed, the object and purpose apparently intended to be accomplished by it will be taken into consideration, as well as the general and technical terms of it. Thus, after the St. 1785, c. 62, § 4, directing that grants or devises to two or more shall be deemed to be estates in common, and not in joint-tenancy, unless it shall therein be said that the grantees are to hold as joint-tenants, or to the survivor or survivors, or unless other words are therein used, showing it to be the intention of such grants or devises that the land should ves1 as joint estates, and not estates in common. Since the passing of the statute, it has been frequently held, that when words are used which, in their ordinary import and by force of the statute, would create a tenancy in common, they shall yet be held to create a joint estate, if such construction will best subserve and carry into effect the obvious purpose of the deed, manifested on its face, by express words or necessary implication. The terms which manifest such an intention are “ other words,” within the meaning of the statute, manifesting an intention that the same shall vest as a joint estate. Therefore, where the words of conveyance in a mortgage would create a tenancy in common, it would be held to be a joint tenancy, if apparent on the face of it that it was made to secure a joint debt. Inasmuch as the debt would survive, it would best subserve the intention of the parties to hold the collateral security on real estate to be a joint tenancy, because the security would then survive and follow the debt to be secured. Appleton v. Boyd, 7 Mass. 131; Goodwin v. Richardson, 11 Mass. 469
*81 Another rule, quite analogous in principle, but more directly applicable to the present case, is, that where an estate is granted to two or more persons, in trust, and the trusts expressed in the same deed are of such a nature that an estate in fee in the trustee is necessary to support them, it shall be held that an estate in fee was intended, though the words of conveyance, independent of such trust, would pass an estate for life only. The reasoning from which this conclusion is drawn is simple and satisfactory. The grantor has an estate in fee, and, of course, a general power of disposing; the leading object of creating the legal estate is, to uphold the trust and carry it into effect; this is manifested in the conveyance itself, and therefore the law infers that the grantor, by the execution of the deed, intended to effect and did effect a conveyance in fee.
This point has been so recently decided in this court, and the authorities, both English and American, cited in support of it, that it seems unnecessary to do more than add, that, upon a revision, we are satisfied that it is correct. Cleveland v. Hallett, 6 Cush. 403.
The conveyance in question, of William Burbeck to William Bell and others, as joint tenants, but without words of inheritance, was made to hold in trust for the use of the free-masons’ lodge in Boston, known by the name of St. Andrew’s Lodge, to their own proper use, forever.
It is no objection that, at that time, there was no court of equity in Massachusetts, to enforce a trust specifically. It is a question, not of remedy, but of construction; what did the grantor intend ? If he intended it to support a trust in its nature perpetual, then he intended to give a legal estate in perpetuity to sustain it. Such a trust would be equally binding upon the consciences of the grantees, whether any court of justice could afford a remedy or not; and the grantor could have no reason to suppose that a trust would not be faithfully executed, without regard to legal compulsion.
Then the remaining question is, whether the trust thus declared is in its nature perpetual. This lodge, as appears by the evidence, was constituted under what is called a'charter *82 from the grand lodge of Scotland. It appears by evidence, as well as by general notoriety, that a masonic lodge is a voluntary association of persons, closely united by rules, usages, and ceremonies, maintaining a perpetual succession, by the admission of new members; and, whatever other objects they may have, one leading one is that of charity, supporting the poor and indigent members, then widows, and orphans. This object is essentially perpetual, for “ the poor ye have always with you.”
Nor is it an objection, that the association who are designated ás the beneficiaries, to manage its funds and administer its charities, is not incorporated. To take and hold legal estate directly, to maintain actions as an aggregate body and in a name of association, incorporation is necessary. But a voluntary association, meeting and acting under a common name, for a common object, especially a charitable one, duly organized by choosing officers, keeping written minutes of their votes and acts in nature of a record, and thus being capable of being designated and identified by proof, is a body capable of being the beneficiaries of such a trust, though not incorporated. Tucker v. The Seaman’s Aid Society, 7 Met. 188, 200; Washburn v. Sewall, 9 Met. 280.
The court are of opinion, that the body called St. Andrew’s Lodge was such a voluntary association, capable of being designated, identified,, and ascertained by legal proof, so as to satisfy the above conditions, and a trust for their use was in its nature perpetual; and, therefore, that the grant upon such trust was a conveyance in fee to the trustees.

Judgment for the tenmts.