Caruthers, J.,
delivered the opinion of the Court.
This bill was filed 7th December, 1855, and the case involves the settlement of three different partnerships or mercantile firms.
1. That of C. H. & D. L. Coffin, which was formed 26th October, 1846, and commenced business on a eapi- *94 tal of $30,863, of which $22,346, was furnished by Charles H., and $8,527 by Daniel L.
2. That of C. H. & D. L. Coffin & Co., constituted, 17th July, 1851, by the admission of A. M. Piper, the complainant, into the firm, who furnished no capital, but was to have one-fifth of the nett profits for his personal services.
3. A firm of the same name, continuing, after the ■ death of Daniel L., by the introduction of his widow and administrator into his place.
The said Charles H. is now dead, and his personal representatives are made parties.
Daniel L. died without children, and his widow, personal representatives, and heirs at law, are parties.
No account has yet been taken, but an interlocutory decree settling the rights of the parties, involving various important questions, was made at the last July Term of the Chancery Court.
1. The first question is, as to the right of complainant to claim compensation for his services, either after or before the death of the other partners. Whatever may be thought of the justice of the rule, where the services of members of a firm are unequal, there is ¡certainly nothing better settled, than that such a claim [cannot be made without an express stipulation to that effect. 1 J. C. R., 157; 3 do., 431; 7 Page, 483. The law does not undertake to measure between the partners the relative value of their services, severally bestowed upon the joint business, without an express contract. 3 Kent, 37, note (a). Though the rule may seem still harder in the case of the surviving partner, yet, it is the same, he can have no compensation for trouble *95 or services in settling up the business, unless the same be stipulated. 3 Kent 64, (note); Story on Part., 447 1 Ves. & Bea., 170. This disposes of the only question in which the complainant is interested. But as to the rights of defendants among themselves, the following difficulties arise, which have necessarily to be adjusted by the rules of law, as the original parties are not here to act for themselves, and the interests of minors are involved.
1. As to the right of Charles H. to interest upon his excess of capital. This seems to have been the original agreement of the parties, and regularly allowed until about, or after the formation of the second partnership, when the question was raised by Daniel L., whether the failure of the health of Charles H., and the consequent inability on his part to render the efficient and active services he had before done, and which the former continued to do, should not suspend the allowance of interest during the continuance of such disability. This was an honest and friendly difference of opinion between the brothers, as to what was right and just in the matter, It seems to have produced no alienation of feeling, and both were desirous to have it settled correctly. In this spirit they referred it to their brother-in-law, Judge McKinney, but he declined to act, on account of his inexperience in mercantile affairs, but recommended them to refer the question to another brother-in-law and mutual friend, Mr. Bowie, of Charleston, South Carolina, who was an intelligent and experienced merchant. This was readily agreed to, and he settled the question in favor of the right of Charles H. to the interest. Daniel L. was not still satisfied on the subject, *96 and there is no evidence that he ever fully yielded up his opinion, or acquiesced in the demand. But yet he should, perhaps, be held bound by the decision of the referee, Mr. Bowie, and particularly as he continued to use and employ the excess of capital in the business, as before. Besides this, there is evidence going to show that the services of Charles H. to the firm, though not exactly of the same kind as those of Daniel L., were not less valuable. The same reasons and considerations apply to the firm of C. H. & D. L. Coffin & Co., and the continuation of the business.
2. The next, .and most important question arises between the distributees, and heirs at law of Daniel L., as to the effect of an investment made by the second firm, in real estate. Three lots were purchased in Knoxville, one with a view to the erection of three fine store houses. The houses ha,ve been built and finished at considerable cost, out of the means of the firm. They were commenced in the life-time of Daniel L., when the contracts were made for all the brick-work apd much of the other material. But the erections were continued and finished after his death, and after the death of Charles H., by the surviving partner, Piper. So it will be seen that a part of the estate of Daniel L., which was stock or personalty at his death, and would have gone to his distributees, has gone into the said houses, and thereby become realty; and will, as such, go to his heirs upon our construction of the law, and they are different persons. This would not be important, however, if the position assumed for the dis-tributees be correct, to-wit, that the law regards realty belonging to partners, and purchased with firm means, *97 as personalty. But is that the law? This question was not free of difficulty in England, but the doctrine was ultimately settled there, to be, that all real property owned by the partners, and used in carrying on their business, and all such as may have been purchased with the means, and in the name of the firm, should be deemed partnership stock, and' treated as personalty. According with this, are the American cases, in 4 Munford, 316; 7 Connecticut, 11; and other cases; and the opinion of Chancellor Kent, in his 3 Vol. Com., 14, and subsequent pages, where the subject is fully treated. But, on the other side, there are high and numerous authorities in that country, and in this, 3 Brown, 199; 7 Ves., 453; 9 Ves., 500; 15 Johnson, 159; 11 Mass., 469. It may be said, that the weight of authority is, that it is to be regarded as stock, and should be so held, if the question was an open one in this State. But as early as the year 1816, in the case of McAlister v. Montgomery, 3 Haywood, 94; the act of 1784, ch. 22, sec. 6, Car. and Nich., 417, was held to have settled this question in favor of the heirs of deceased partners. And again, in 1834, in the case of Yeatman v. Wood, 6 Yerger, 21, that case was approved and followed. It is said these cases are not well considered, and should be reviewed. But an important rule of property having been thus settled, and so long acquiesced in, should not now be disturbed, even if we considered it originally wrong. It is easy to see the mischief and hardship that would result from shaking or unsettling fixed rules of property, in view of which men have acted and made investments for so great a length of time. A rule that might act as we would desire in a particular case, would *98 work great injustice in many of the cases — they must be general.
As to the firm means which Avent into the buildings before the death of Daniel L., or in pursuance of the contracts made in his life-time, we are satisfied the con-Arersion was complete, and the same rule will apply; we are inclined to the opinion, that such would be the case with regard to the whole amount expended in the completing the erections, if it were done according to the original plan and design-, on the ground that his assent had been given before his death, to the conversion of the entire amount. But this last question may be reserved for the Chancellor, upon the coming in of the report, if desired. It may, perhaps, be worthy of more examination than we have been able to give it at this time.
The decree will be affirmed, and the case remanded for the account and further proceedings.